FLEET CREDIT CORPORATION,
a Rhode Island Corporation,
Plaintiff–Appellee,

v.

TML BUS SALES, INC.,
Applicant–Appellant.

No. 93–17218.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 11, 1995.

Memorandum May 23, 1995.

Order and Opinion Sept. 1, 1995.

Bruce Sherman, Law Office of Kendall M. Squires, San Diego, CA, for appellant.

Thomas E. Shuck, Ivanjack & Lambirth, Los Angeles, CA, for appellee.

Before GOODWIN, POOLE and KLEINFELD, Circuit Judges.

## ORDER

The memorandum decision filed May 23, 1995, is redesignated as an authored opinion by Judge Kleinfeld with modification.

## OPINION

KLEINFELD, Circuit Judge:

We decide a question of lien priorities arising out of a bankruptcy and a fraudulent conveyance.

### I. Facts.

Berthold owned Taylor Bus Service, which filed chapter 11 bankruptcy. TML Bus Sales secured a judgment for more than $17 million against Berthold personally for embezzlement and conversion of TML's funds. Fleet Credit obtained a default judgment against Berthold personally in the amount of $153,275.89 plus interest.

After the bankruptcy filing, two longtime friends and employees of Berthold's incorporated Victory Enterprises as a Nevada Corporation. Taylor Bus Service emerged from the bankruptcy and received $1.9 million from the bankruptcy trustee. Taylor Bus loaned the $1.9 million to Victory, using falsified dates on documents to hide the true nature of the transaction. The district court found that the promissory note was a falsely dated instrument drafted to "disguise a fraudulent transfer."

Victory deposited the $1.9 million into a Schwab brokerage account. Fleet believed that the money in the Schwab account really belonged to its judgment debtor, Berthold, and filed a lien against the Schwab account on March 30, 1992, in order to satisfy the judgment. Schwab refused to turn the money over to Fleet, because the account was Victory's corporate account.

Fleet then filed this diversity suit in federal court. The court determined that Taylor Bus Service was an alter ego of Berthold, and Taylor Bus's conveyance to Victory was a fraudulent conveyance, so Fleet could reach the money in Victory's Schwab account:

The $1.9 million transfer to Victory was made '[w]ith actual intent to hinder, delay, or defraud' Taylor's and Berthold's creditors. Cal.Civ.Code. § 3439.04(a)

\* \* \*

The avoidance of the transfer to Victory effectively 'revests' in Taylor the property transferred.

\* \* \*

Berthold operated Taylor as an extension of himself. He personally directed the transfer of large sums of money, and did so for reasons that had nothing whatsoever to do with the operation of the corporate entity. Based on all the facts presented to the Court, it is clear beyond cavil that an inequitable result would follow were the Court to permit Berthold to shield himself with Taylor's corporate form.

Meanwhile, TML sued Victory in state court to establish its own rights to the money in the Schwab account. The state court likewise held that Berthold's creditor, TML, could reach the money in what was nominally Victory's Schwab account.

TML filed a notice of lien in Fleet's federal case, claiming a right under California Code of Civil Procedure § 708.410 to all amounts remaining after Fleet satisfied its state court judgment for $153,274.89 plus interest. Fleet moved for attorneys' fees as well, as a priority ahead of TML's lien. The district court held that TML could not secure a lien against Berthold at all, and Fleet was entitled to attorneys' fees.

### II. Analysis.

TML appeals the determination that it had no right to a lien under the applicable statute and asks us to find that, if it did have a right to secure a lien, its lien was superior to Fleet's as to the amount of attorneys' fees. We reverse, and hold that TML did have a lien, behind Fleet's lien for the amount of its earlier judgment, but ahead of Fleet's lien for attorneys' fees.

TML obtained a $17 million, and Fleet a $153,000, judgment against Berthold in state court. Berthold hid $1.9 million in an account at Charles Schwab. His alter ego corporation loaned the money to another corporation in a fraudulent conveyance designed

to keep the money away from creditors, as established by findings of fact after trial. The Schwab account was in the name of the second corporation, so for Berthold's creditors to get it, they had to penetrate two layers of fraud, the alter ego corporation, and the fraudulent conveyance. Fleet did so, in federal court, and TML established substantially the same thing in state court. The attorneys' fees of Fleet at issue are those Fleet won in the federal court case establishing the fraudulent conveyance and alter ego, not the earlier case establishing Berthold's debt to Fleet of $153,000.

The district court concluded that because Berthold did not obtain a judgment in his favor in the fraudulent conveyance action in federal court in which TML sought to assert its lien, TML could not assert a lien on Berthold's interest. We read the California statute differently, and conclude that TML's motion for an order enforcing his lien should have been granted. We review this question of California law de novo, *Ravell v. United States,* 22 F.3d 960, 961 n. 1 (9th Cir.1994).

The statute at issue reads:

(a) A judgment creditor who has a money judgment against a judgment debtor who is a party to a pending action or special proceeding may obtain a lien under this article, to the extent required to satisfy the judgment creditor's money judgment, on both of the following:

(1) Any cause of action of such judgment debtor for money or property that is the subject of the action or proceeding.

(2) The rights of such judgment debtor to money or property under any judgment subsequently procured in the action or proceeding.

Cal.Code Civ.P. § 708.410.

Subsection (2) entitles TML to a lien for the amount of its judgment even though Berthold did not have a cause of action which was the subject of the lawsuit, because the action established that Berthold had an interest in the Schwab account for purposes of awarding his interest to creditors defrauded by his alter ego corporation and fraudulent conveyance. The first subsection lets a judgment creditor take a lien when the judgment debtor sues a third party for money. The second subsection broadens the judgment creditor's rights, so that it can take a lien where the proceeding establishes that the judgment debtor has an interest in money or property, even though the judgment debtor was not the plaintiff. If there were doubt about this reading, it would be resolved by the legislative history. In the Legislative Committee Comment, immediately following the statute, the section is interpreted as follows:

A lien under this article reaches the judgment debtor's right to money under the judgment in the pending action or proceeding as permitted by former law [referring to the superseded section 688.1]. See *Abatti v. Eldridge,* 103 Cal.App.3d 484, 163 Cal.Rptr. 82 (1980). The lien also reaches *any right* of the judgment debtor to property under the judgment.

Cal.Code Civ.P. § 708.410 Legislative Committee Comment—Assembly 1982 Addition (emphasis added).

Fleet urges that the fraudulent conveyance lawsuit did not establish a right in Berthold to anything, because the district court's conclusion of law number 14 in its July 9, 1993, order sets aside the fraudulent transfer to the second corporation only to the extent necessary to satisfy Fleet's claim. The findings of fact, however, establish that the conveyance was fraudulent, and the first corporation an alter ego, without regard to any special circumstances attributable only to Fleet and not to other similarly situated creditors. This is not to say that Berthold could take the money for himself under the judgment. Whether he would be entitled to any excess, or Victory could keep it, would be adjudicated only in the event (an impossibility in the facts of this case) that a surplus remained after satisfying the liens of the creditors defrauded. The findings of fact establish Berthold's right to the Schwab account insofar as his right is subject to claims of creditors defrauded by his alter ego corporation and fraudulent transfer.

Fleet sued under California Code of Civil Procedure § 708.210, which allows a judgment creditor to collect its money by suing a

third person who has possession or control "of property in which the judgment debtor has an interest...." The district judge correctly analyzed the case when he said "Fleet nevertheless may recover its judgment out of the Schwab One account by establishing that the money in that account *belongs to Berthold.*" (CR 178 at 16) (emphasis added). *Abatti,* 163 Cal.Rptr. at 85, 163 Cal.Rptr. 82, establishes that a judgment debtor does not have to be a plaintiff in a subsequent suit for its judgment creditor to obtain a lien in that suit. Berthold got a right to funds and under these circumstances, the statute permitted TML to secure a lien under § 708.410.

■ Fleet argues that even if TML is entitled to a lien, its attorneys' fees obtained in the fraudulent conveyance suit have priority over TML's lien. TML argues that the court erred in awarding Fleet attorneys' fees at all in the fraudulent conveyance suit. We conclude that TML's lien has priority over Fleet's attorneys' fees, so we need not reach the question of whether the court erred in awarding Fleet attorneys' fees. TML's lien will exhaust the account.

Fleet was a judgment creditor based on its state court judgment for $153,000 with interest on the judgment until paid. The later federal court judgment in the fraudulent conveyance case, not the state court judgment which made Fleet a judgment creditor for $153,000, awarded Fleet the $79,000 in attorneys' fees at issue.

Fleet's lien based on its state court suit arose upon filing, and was for the amount of the judgment in that suit. *In re Marriage of Kerr,* 185 Cal.App.3d 130, 229 Cal.Rptr. 610, 611 (1986). TML won a money judgment against Berthold in state court in 1989, and filed a notice of lien in this action on July 15, 1993, before Fleet requested an amendment to the July 9 order so it could get fees, and three months before those fees were awarded.

■ In California, "[o]ther things being equal, different liens upon the same property have priority according to the time of their creation, except in cases of bottomry and respondentia." Cal.Civ.Code § 2897. This first in time, first in right rule controls. Fleet was first in time for $153,000, but TML was first in time for $17 million as against Fleet's subsequent $79,000 lien for its attorneys' fees judgment obtained in the federal fraudulent conveyance action. The lien established when a judgment creditor files a suit under § 708.410, is "a lien for the amount required to satisfy *the money judgment....*" Cal.Code Civ.P. § 697.010 (emphasis added),[1] unless otherwise stated by statute. There is no statute altering that equation, so Fleet's initial filing only entitled it to a lien for the amount of its money judgment, not its fees. "A lien created by statute is limited in operation and extent by the terms of the statute, and can arise and be enforced only in the event and under the facts provided for in the statute.... The lien cannot be extended by the courts to cases not provided for...." 51 Am.Jur.2d § 38 at 176–77.

No exception to the first in time, first in right rule entitles Fleet to augment its lien by subsequent awards, so the first lien created takes priority. *Roseburg Loggers, Inc. v. U.S. Plywood–Champion Papers, Inc.,* 14 Cal.3d 742, 122 Cal.Rptr. 567, 572–73, 537 P.2d 399, 404–05 (1975). As between TML's lien and Fleet's lien, if any, for the $79,000 in subsequently awarded attorneys' fees, TML's lien is first in time.

Because we find that under California law TML was entitled to a lien and that lien had priority over Fleet's right to obtain attorneys' fees, we do not reach TML's claim that no award of fees was permissible under California Code of Civil Procedure § 708.290.

Fleet has obtained the money from the Schwab account, pursuant to the district court judgment. Our decision entitles TML to all that is left after Fleet's $153,274.89 lien plus interest. TML has requested an award of interest on the money which Fleet obtained in excess of its state court judgment with interest, and which should have been paid to TML, from the time the money was

---

1. *See also* Cal.Code of Civ.P. §§ 697.540(a), 708.410(a), which also allow liens, but only to satisfy the amount of a prior *money judgment.*

distributed to Fleet. Its entitlement is not governed by 28 U.S.C. § 1961, for the time between the distribution to Fleet and entry of the judgment in district court pursuant to this decision, because TML was entitled to a priority with respect to the Schwab account during that period, not a money judgment against Fleet. The district court shall determine whether interest is payable for some or all of the time between the distribution to Fleet and the judgment based on this decision, and in what amount, under the principle stated in the Restatement of Restitution § 156 or other applicable law.

REVERSED.