In re Stephen Brian TURNER,
etc., Debtor.

John T. Kendall, Chapter
7 Trustee, Plaintiff,

v.

Susana C. Turner, et al., Defendants.

Ah Beng Yeo and E.A. Martini,
Plaintiffs,

v.

Stephen Brian Turner, M.D.,
etc., Defendant.

Bankruptcy No. 02–44874TK.
Adversary Nos. 02–7273 AT, 02–7298 AT.

United States Bankruptcy Court,
N.D. California.

Dec. 5, 2005.

142

Timothy Carl Aires, Aires Law Group, Newport Beach, CA, for Plaintiffs Ah Beng Yeo and E.A. Martini.

Chris Kuhner, Kornfield, Paul & Nyberg, Oakland, CA, for Plaintiff John T. Kendall.

Drew Henwood, Law Offices of Drew Henwood, San Francisco, CA, Herman A.D. Franck, Law Offices of Herman Franck, Sacramento, CA, for Defendant Susana Turner.

## MEMORANDUM OF DECISION AFTER TRIAL

LESLIE TCHAIKOVSKY, Bankruptcy Judge.

The two above-captioned adversary proceedings were consolidated for trial. The Court conducted a trial on most of the claims asserted on March 8, 9, and 10, 2005.[1] At the conclusion of the trial, the Court took the claims under submission. It deferred rendering a decision pending receipt of the above-captioned debtor's (the "Debtor") tax returns. Pursuant to the Court's direction, the parties filed closing briefs on or about November 7, 2005. Having considered the evidence and argument presented by the parties, the Court finds and concludes as set forth below.

### SUMMARY OF FACTS

The Debtor graduated from medical school in or about 1980. The Debtor and Susana Turner ("Susana") were married on February 16, 1981. After five years of post-graduate work, the Debtor began practicing medicine. Some time during the 1980s, a complaint about the Debtor's professional conduct was lodged with the Medical Board of California, Department of Consumer Affairs. Thereafter, the Debtor was placed on probation and permitted to practice medicine only on certain conditions.

In November 1991, the Debtor and Susana acquired title to and began living in a residence located in Alameda County, California (the "Home"). The deed by which they acquired title was recorded shortly thereafter. In 1994, while the Debtor was still practicing medicine on probation, he was convicted of a misdemeanor based on an incident involving a patient. This sec-ond incident ultimately led to a license revocation proceeding and to the Debtor's surrender of his medical license. Thereafter, the Debtor supported himself and his family by performing paramedical examinations for insurance companies.

In 1994, the Debtor attended a seminar on "asset protection" given by Robert Matthews ("Matthews"). At the conclusion of the seminar, Matthews referred the Debtor to a tax attorney knowledgeable about "asset protection." The attorney provided the Debtor with a form of document entitled Declaration of Trust (the "GG Trust Declaration") which the Debtor and Susana signed but did not record. The GG Trust Declaration purported to establish a Bahamian Trust and declared that certain of the Debtor's and Susana's assets, including the Home, were held in trust for the Debtor's and Susana's three children.

Beginning in the Spring of 1995, the Debtor engaged in conduct with respect to the plaintiffs Ah Beng Yeo and E.A. Martini (the "Plaintiffs") that was ultimately found by a jury to be tortious. At about the same time, the Debtor met with Matthews in Ventura to discuss the subject of "asset protection." The Debtor showed Matthews a transmutation agreement, purporting to change the character of the Home to Susana's separate property (the "Transmutation Agreement") and the GG Trust Declaration as evidence of what efforts he had made previously to "protect" his assets. Matthews advised the Debtor about some of the disadvantages of holding real property in an offshore trust. They discussed the use of limited liability companies to "protect" assets.

In September 1997, the Plaintiffs filed a lawsuit (the "Tort Action") against the

---

1. The Court severed the dischargeability claim asserted in A.P. No. 02–7298 AT for a later trial, if necessary.

Debtor and in August 1998 obtained a money judgment (the "Judgment"). At about the same time, at the Debtor's direction, Matthews created a Nevada limited liability company named Real Investment Capital Holdings LLC ("RICH LLC") and a Nevada corporation named Proset Enterprises, Inc. ("Proset").[2] In publicly filed documents, the GG Trust was identified as the 99 percent owner and Proset was identified as the 1 percent owner of RICH LLC. Alfred Cheung, Susana's brother, a resident of Hong Kong, was identified as Proset's President and Secretary.

In March 1998, after the Civil Action was filed but before the Judgment was entered, Susana and the Debtor executed a grant deed (the "1998 Deed"), transferring title to the Home to RICH LLC. The 1998 Deed was recorded in April 1998. On March 16, 1999, approximately seven months after the Judgment was entered, the Debtor, acting on behalf of RICH LLP, executed a deed of trust in favor of Proset (the "Proset Deed of Trust"), encumbering the Home to secure a line of credit. The Proset Deed of Trust was recorded on March 18, 1999.[3] The Debtor is identified in the Proset Deed of Trust as the managing partner of RICH LLC.

In October 1999, the Plaintiffs filed a fraudulent transfer action against the Debtor and Susana.[4] On May 31, 2001, the Plaintiffs obtained a writ of execution and attempted to execute the writ against the Home. In June 2001, the Debtor prepared a dissolution petition for Susana in which she sought to dissolve her marriage to the Debtor. In the petition, the Debtor and Susana stipulated that the Home (which had previously been transferred to RICH LLC) should be "confirmed" as Susana's separate property. A dissolution judgment (the "Dissolution Judgment") was entered in September 2001. Notwithstanding their divorce, the Debtor and Susana both continue to live in the Home and file joint tax returns, identifying themselves as married.

On December 27, 2001, RICH LLC executed a deed, transferring title to the Home to Susana (the "2001 Deed").[5] The 2001 Deed was recorded the same day.[6]

2. The Debtor and Matthews continue to maintain a business relationship. Matthews owns a company with an office in Las Vegas that serves as the resident agent for the RICH LLC and Proset, as well as for numerous other companies. In addition, for a small annual payment, the Debtor serves as the "nominee" president for at least six limited liability companies formed by Matthews for other clients who do not wish their names to be listed in a public filing. The public filing does not reveal that the Debtor is not a bona fide officer of the companies.

3. The Debtor testified at trial that there was never any draw on the line of credit. As a result, the Proset Deed of Trust did not secure any debt. Moreover, there was no credible testimony at trial that Proset ever had the ability to answer a draw. No credible evidence was provided that either Proset or the GG Trust, Proset's interest holder, had any assets other than their interest the Home. The Debtor testified vaguely that the GG Trust had held investments which generated income. The Court did not believe him.

4. After the Debtor filed his bankruptcy petition, this action was removed to the bankruptcy court and was designated A.P. No. 02–7273 AT. Thus, it is one of the two above-captioned adversary proceedings. As fraudulent transfer actions belong to the bankruptcy estate, the Trustee has assumed the prosecution of this proceeding in place of the Plaintiffs. See Fed. R. Bankr.Proc. 6009.

5. The Court has not been provided with a copy of the 2001 Deed. However, the Court assumes that the Debtor signed the 2001 Deed on behalf of RICH LLC.

6. The Dissolution Judgment had no legal effect on Susana's interest in the Home. Prior to the entry of the Dissolution Judgment, Susana had transferred her separate property

On September 10, 2002, less than one year after the recordation of the 2001 Deed, the Debtor filed a petition seeking relief under chapter 7 of the Bankruptcy Code, thereby commencing this case.

## DISCUSSION

As noted above, the trial addressed claims asserted in two adversary proceedings: (1) A.P. No. 02–7273 AT (the "Fraudulent Transfer Action") and (2) A.P. No. 02–7298 AT (the "Objection to Discharge Action"). The Fraudulent Transfer Action was filed by the Plaintiffs in state court in October 1999. It was removed to this court when the Debtor filed his chapter 7 bankruptcy petition in September 2002. Pursuant to Rule 6009 of the Federal Rules of Bankruptcy Procedure, the Trustee took over the prosecution of this action. The Plaintiffs filed the Objection to Discharge Action in the bankruptcy court after the Debtor filed his chapter 7 bankruptcy petition. They remain the plaintiffs in that action. The Court will address each action in turn.

## A. FRAUDULENT TRANSFER ACTION

The Fraudulent Transfer Action asserts four claims for relief. The first two claims seek to avoid the various prepetition transfers of the Home by the Debtor as actually and constructively fraudulent pursuant to bankruptcy and state law. Section 548 of the Bankruptcy Code permits a trustee to avoid a transfer of an interest of the debtor in property that is actually or constructively fraudulent provided it was made within one year of the bankruptcy filing. *See* 11 U.S.C. § 548.

Section 544(b) of the Bankruptcy Code permits a trustee to avoid a transfer

interest in the Home, acquired pursuant to

that would have been avoidable by an unsecured creditor under applicable state law provided that there is such a creditor with a claim against the bankruptcy estate. *See* 11 U.S.C. § 544(b). Section 3439 et seq. of the California Civil Code permits a creditor to avoid the transfer of an "asset" of the debtor that is actually or constructively fraudulent that is made within four years prior to the date the avoidance action is filed. *See* Cal. Civ.Code §§ 3439.07, 3439.09. "Asset" is defined to include only the unencumbered, nonexempt value of the property transferred. *See* Cal. Civ.Code § 3439.01(a).

Both bankruptcy law and California law define an actually fraudulent transfer as one made with "actual intent to hinder, delay, or defraud a creditor." *See* 11 U.S.C. § 548(a)(1)(A); Cal. Civ.Code § 3439.04(a)(1). Both bankruptcy law and California law define a transfer that is constructively fraudulent, in essence, as one for which the debtor does not received reasonably equivalent value and which is made when the debtor is insolvent or which renders the debtor insolvent. *See* 11 U.S.C. § 548(b); Cal. Civ.Code § 3439.05. In sum, despite their similarities, the right to avoid a fraudulent transfer under the Bankruptcy Code differs from the right to avoid a fraudulent transfer under California law in two significant respects. First, the "reach back" period under the Bankruptcy Code is only one year. The "reach back" period under California law is four years or, in the case of "actual fraud," if later, one year after the transfer could reasonably have been discovered. *See* Cal. Civ.Code § 3439.09(a). Second, under the Bankruptcy Code, the entire transfer is avoided. Under California law, only the transfer of the "asset" is avoided.

the Transmutation Agreement, to RICH LLC.

In the first claim for relief, the Trustee seeks to avoid all of the transfers referred to above as actually fraudulent under both 11 U.S.C. § 548 and Cal. Civ.Code § 3439 et seq. In the second claim for relief, the Trustee seeks to avoid all of the transfers referred to above as constructively fraudulent under both 11 U.S.C. § 548 and Cal. Civ.Code § 3439 et seq. In the third claim for relief, the Trustee seeks a determination that, despite the numerous transfers, the Debtor retained his equitable interest in the Home at the time he filed his bankruptcy petition. Thus, he seeks a determination that the Home is property of the Debtor's bankruptcy estate. In the fourth claim for relief, he seeks turnover of the Home.

 The evidence presented at trial persuaded the Court that all of the transfers in question were made with actual intent to hinder, delay, or defraud creditors. Actual intent must generally be established by reference to external circumstances. California fraudulent transfer law has codified some of the types of circumstances commonly found to indicate actual intent to defraud. Several of these "badges of fraud" are present here.[7] The Court was also persuaded that the Debtor received no consideration for any of the transfers and that they rendered the Debtor insolvent.

The Court did not believe the Debtor's and Susana's testimony that the transfer reflected by the Transmutation Agreement was made to restore marital harmony and to give Susana a sense of financial security. It was obvious to the Court that the Debtor exerted complete control over the disposition of the Home both before and after the execution of the Transmutation Agreement. However, the transfer reflected by the Transmutation Agreement is irrelevant because, as noted above, in 1998, Susana transferred her separate property interest in the Home to RICH LLC pursuant to the 1998 Deed. The Debtor obviously considered the GG Trust Declaration as not having effected a transfer because he did not bother to have any document executed by the trustee of the GG Trust, transferring title back to the Debtor and Susana (or to Susana alone) before he and Susana executed the 1998 Deed.

During the pre-trial motion stage of the proceeding, the Court viewed the 1998 Deed as the critical transfer for fraudulent transfer purposes. Because this transfer occurred more than one year before the filing of the Debtor's bankruptcy petition, the Court assumed that the Trustee's remedies were limited to avoidance of the "asset" transferred pursuant to the 1998 Deed. As a result, at the Court's direction, Susana and the Trustee each called appraisers as expert witnesses to testify as to the unencumbered, nonexempt value of the Home at the time of the 1998 transfer.

Susana's appraiser testified that the Home had no "asset" value at that time. The Trustee's appraiser testified that the Home had approximately $7,700 in unencumbered, nonexempt value. Although both appraisers were competent and credible, the Court found the Trustee's appraiser methodology more reasonable. Thus, if the Trustee were forced to rely on California fraudulent transfer avoidance law, the Court would grant the Trustee a judgment avoiding the transfer of the Home to the extent of $7,700. However, based on the testimony at trial and further analysis of the series of transfers persuades the Court

---

7. For example, all of the transfers were to insiders; the Debtor retained possession and control of the Home after the all of the transfers; the Debtor had been sued before most of the transfers; no consideration was received for the transfers; and the Debtor was rendered insolvent by the transfers. *See* Cal. Civ.Code § 3439.04(b).

that the critical transfer is reflected by the 2001 Deed.

■ The evidence presented persuaded the Court that RICH LLC and Proset were the Debtor's alter egos. The Debtor admitted that these entities were created and their relationship structured to maximize the protection of his assets: i.e., the Home. "Asset protection" is not illegal and is honored by the law if done for a legitimate purpose. For example, an individual may do business through a corporation or limited liability company and will not be held personally liable for the debts of the entity. The assets of the corporation or limited liability company will not be considered the assets of the individual interest holder. However, an entity or series of entities may not be created with no business purpose and personal assets transferred to them with no relationship to any business purpose, simply as a means of shielding them from creditors. Under such circumstances, the law views the entity as the alter ego of the individual debtor and will disregard it to prevent injustice.

Under similar facts, a trial court found that the corporation created by a judgment debtor to hold his assets was the judgment debtor's alter ego. This finding was noted with approval by the Ninth Circuit Court of Appeals. *See Fleet Credit Corp. v. TML Bus Sales, Inc.*, 65 F.3d 119, 120 (9th Cir.1995). In *Fleet*, the trial court found that Berthold, the judgment debtor, had operated a corporation:

> ...as an extension of himself. He personally directed the transfer...and did so for reasons that had nothing whatsoever to do with the operation of the corporate entity.... [I]t is beyond cavil that an inequitable result would follow were the Court to permit Berthold to shield himself with Taylor's corporate form.

*Id.* at 120.

Moreover, in *Fleet*, as here, Berthold caused his alter ego corporation to make a further fraudulent transfer. The Court of Appeals noted that: "for Berthold's creditors to get... [Berthold's assets], they had to penetrate two layers of fraud, the alter ego corporation, and the fraudulent conveyance." *Id.* at 121. Thus, the fraudulent transfer by the alter ego corporation could be treated as a fraudulent transfer by Berthold. *Id.* at 121–22.

■ Thus, the only relevant transfer to be avoided is the transfer reflected by the 2001 Deed: i.e., by the Debtor (through his alter ego, RICH LLC) to Susana. The Court has received no evidence of the value of the "asset" transferred pursuant to the 2001 Deed. However, because this transfer occurred within one year of the bankruptcy filing, there is no need to reopen the evidence for this purpose. The Trustee is entitled to avoid the transfer in its entirety under 11 U.S.C. § 548(a).

■ The avoidance of this transfer causes the interest in the Home to revert to RICH LLC which, as discussed above, the Court views as the Debtor's alter ego. Because the Debtor and Susana were divorced before the bankruptcy was filed, the avoidance of the transfer reflected by the 2001 Deed causes the entire interest in the Home to reverts to the Debtor as his separate property. Thus, the Home is property of the Debtor's bankruptcy estate in its entirety. As a result, the Trustee is also entitled to a judgment on his fourth claim for relief: i.e., for turnover of the Home pursuant to 11 U.S.C. § 542.

## B. DENIAL OF DISCHARGE CLAIM

■ The Denial of Discharge Action seeks denial of the Debtor's discharge un-

der 11 U.S.C. § 727(a)(2), (4), and (5). Section 727(a)(2) of the Bankruptcy Code provides, in pertinent part, that an individual chapter 7 debtor may not obtain a discharge if "the debtor, with intent to hinder, delay, or defraud a creditor...has transferred... or concealed... (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition." The transfer of the Home by RICH LLC to Susana pursuant to the 2001 Deed occurred within one year of the bankruptcy filing. As discussed above, the Court finds and concludes that RICH LLC was the Debtor's alter ego and that the transfer reflected by the 2001 Deed was made with actual intent to hinder, delay, or defraud the Plaintiffs. Thus, the Debtor's discharge should be denied based on 11 U.S.C. § 727(a)(2).

 The Debtor's discharge should also be denied under 11 U.S.C. § 727(a)(4). Section 727(a)(4) provides, in pertinent part, that an individual chapter 7 debtor may not obtain a discharge if "the debtor knowingly and fraudulently, in or in connection with the case(A) made a false oath or account...." The Court concludes that the Debtor knowingly and fraudulently made several false oaths on the Debtor's Schedules of Assets and Liabilities (the "Debtor's Schedules") and Statement of Financial Affairs (the "SOFA"). Both documents were signed by the Debtor under penalty of perjury.

First, the Court views as a knowing and false oath the Debtor's omission of any reference to his interest in the Home. Schedule A of the Debtor's Schedule of Assets and Liabilities (the "Debtor's Schedules") asked the Debtor to list any interest in real property and to describe the nature of the interest. The Court was persuaded that, notwithstanding the numerous paper transfers of his interest in the Home, at the time he filed his bankruptcy petition, the Debtor retained an equitable interest in the Home. He failed to list that interest on Schedule A.

In addition, item 10 on the Debtor's SOFA directed him to list any transfers of property other than in the ordinary course of business within one year prior to the bankruptcy filing. As discussed above, the Court views the 2001 Deed as a transfer by the Debtor. The Debtor failed to list this transfer and marked the box indicating that there were no such transfers. The Court views this omission and mark as a knowing and fraudulent false oath.

Second, Schedule B of the Debtor's Schedules, item 12, asked the Debtor to list any interests in incorporated or unincorporated businesses. As discussed above, the Court was persuaded that the Debtor was the equitable owner of RICH LLC and Proset at the time he filed his bankruptcy petition. The Debtor failed to list these interests and instead checked the space in the column indicating that he had no interest in any incorporated or unincorporated business. The Court also views this omission and mark as a knowing and fraudulent false oath.

Third, Schedule I and J required the debtor to list his income and expenses at the time the bankruptcy petition is filed. On Schedule I, the Debtor identified himself as divorced. He listed a monthly income of $5,000 and, on Schedule J, listed expenses of $5,106, the largest item being an alimony payment of $4,657. This was inconsistent with the Debtor's sworn statements in his tax returns for that year in two respects. As noted above, in their tax returns, filed jointly notwithstanding their prior divorce, the Debtor and Susana identified themselves as married. Not surprisingly, they also listed no alimony payment.

Although the Court believes that the Debtor's and Susana's divorce was effected for fraudulent purposes, they are nonetheless divorced. Thus, the Debtor's false statement under oath concerning his marital status is the one made on his tax returns, not the one made on Schedule I. However, based on the evidence presented, the Court finds and concludes that the Debtor's statement on Schedule J that his monthly expenses included an alimony payment of $4,675 was a knowing and fraudulent false statement. Susana testified credibly that the Debtor did not pay her alimony of $4,675 a month. Instead, he simply gave her money when she asked for it. The Court is persuaded that this false statement, standing alone, warrants denial of the Debtor's discharge.

Finally, 11 U.S.C. § 727(a)(5) of the Bankruptcy Code provides, in pertinent part, that an individual chapter 7 debtor may not obtain a discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge...any loss of assets or deficiency of assets to meet the debtor's liabilities...." The Plaintiffs failed to present sufficient evidence to meet their burden of establishing a claim for denial of the Debtor's discharge under this subsection.

## CONCLUSION

With respect to the Fraudulent Transfer Action:

1. With respect to the First Claim for Relief, the Trustee is entitled to a judgment declaring that RICH LLC and Proset were alter egos of the Debtor and avoiding the transfer of the Home to Susana pursuant to the 1998 Deed as an actually fraudulent transfer under 11 U.S.C. § 548(a)(1)(A).

2. Alternatively, with respect to the Second Claim for Relief, the Trustee is entitled to a judgment avoiding the Home to Susana pursuant to the 1998 Deed as a constructively fraudulent transfer under 11 U.S.C. § 548(a)(1)(B).

3. With respect to the Third Claim for Relief, the Trustee is entitled to a judgment declaring that, at the time he filed his bankruptcy petition, the Debtor retained his equitable interest in the Home.

4. With respect to the Fourth Claim for Relief, the Trustee is entitled to a judgment ordering turnover of the Home to the Trustee.

With respect to the Denial of Discharge Action:

1. The Plaintiffs are entitled to a judgment denying the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2) and (4). Their claim for denial of the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(5) will be dismissed with prejudice.

2. The second claim for relief, seeking to except the Plaintiffs' Judgment from the Debtor's discharge, is dismissed as moot.

Counsel for the Trustee is directed to submit a proposed form of judgment in accordance with this decision.