# IN THE SUPREME COURT OF THE STATE OF NEVADA

DOMINIC J. MAGLIARDITI;
FRANCINE MAGLIARDITI IN HER
INDIVIDUAL CAPACITY AND AS
TRUSTEE OF THE FRM TRUST, THE
DJM IRREVOCABLE TRUST, AND
THE FANE TRUST; ATM
ENTERPRISES LLC; DII CAPITAL
INC.; DFM HOLDINGS LTD.; DFM
HOLDINGS LLP; DII PROPERTIES
LLC; MAGLIARDITI LTD.;
CHAZZLIVE.COM LLC; SPARTAN
PAYMENT SOLUTIONS LLC; AND
DFM HOLDINGS LP,
Appellants,
vs.
TRANSFIRST GROUP, INC.;
TRANSFIRST THIRD PARTY SALES
LLC; AND PAYMENT RESOURCES
INTERNATIONAL, LLC,
Respondents.

No. 73889



FILED

OCT 2 1 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
DEPUTY CLERK

## ORDER ANSWERING QUESTIONS AND REMANDING

The United States District Court for the District of Nevada certified the following seven questions to this court concerning the application of the alter ego doctrine to entities other than corporations.

1. May a judgment creditor bring a claim for alter ego to make a third party liable on the judgment or is alter ego a remedy only?

2. Does alter ego apply to limited liability companies?

3. Does alter ego apply to partnerships?

4. Does alter ego apply to trusts?

5. Does alter ego apply to spendthrift trusts?

SUPREME COURT
OF
NEVADA

(O) 1947A

19-43434

6. Is an alter ego of a judgment debtor a "debtor" under Nevada's Uniform Fraudulent Transfer Act?

7. Is a transfer between alter egos or between the judgment debtor and an alter ego a "transfer" under Nevada's Uniform Fraudulent Transfer Act?

We accepted these certified questions and accepted briefing. We conclude as to question one, that a judgment creditor may bring a claim for alter ego to make a third party liable on the judgment. As to questions two and three, we conclude that the alter ego doctrine applies to limited liability companies (LLCs) and partnerships. As to questions six and seven, we conclude that an alter ego of a judgment debtor is a "debtor" under Nevada's Uniform Fraudulent Transfer Act (NUFTA), and a transfer between alter egos or between the judgment debtor and an alter ego is a "transfer" under NUFTA. However, because it is unclear from the record the nature of the trusts at issue, we decline to answer certified questions four and five and remand to the United States District Court for the District of Nevada for further clarification.

*Facts and Procedural History*

"This court's review is limited to the facts provided by the certification order . . . ." *In re Fontainbleau Las Vegas Holdings*, 128 Nev. 556, 570, 289 P.3d 1199, 1207 (2012). TransFirst Group, Inc., TransFirst Third Party Sales LLC, and Payment Resources International, LLC (together, "TransFirst") obtained a judgment in the United States District Court for the Northern District of Texas against Dominic Magliarditi on fraud-related claims. Following unsuccessful post-judgment collection efforts, approximately $4 million remains unpaid. TransFirst brought the underlying litigation in Texas against Dominic, his wife Francine

Magliarditi, and various trust and corporate entities associated with Dominic and Francine alleging that Francine and the entities are alter egos of Dominic and therefore liable on the judgment. TransFirst also brought claims under the Uniform Fraudulent Transfer Act, alleging that transfers to and between the entities and Francine were fraudulent.

While the suit was pending, TransFirst brought a temporary restraining order (TRO) against the Magliarditis and corporate and trust entities, seeking to prevent them from transferring, concealing or otherwise disposing of their assets. The federal district court in Texas granted the TRO with respect to some of the parties, but not as to others, asserting that the court did not have jurisdiction over those entities. The Texas court then transferred the case to the United States District Court for the District of Nevada. The federal district court in Nevada reinstated the TRO as to all of the entities and set a hearing for TransFirst's pending motion for a preliminary injunction. The court granted TransFirst's preliminary injunction, making several predictions about Nevada law that are the subject of the underlying order certifying questions to this court seeking clarification of those predictions. Shortly thereafter, the Magliarditis timely moved for reconsideration of the preliminary injunction order in light of this court's recent decision in *Klabacka v. Nelson*, 133 Nev. 164, 180-81, 394 P.3d 940, 953 (2017).[1] In *Klabacka*, this court held that a constructive trust could not be used to reach the assets in a spendthrift trust. 133 Nev.

---

[1] The Magliarditis also requested the Nevada federal district court reconsider whether the alter ego doctrine is a separate cause of action or a remedy, whether a judgment could be collected against the corporate and trust entities, to permit the Magliarditis to withdraw specific dollar amounts per month from their accounts in light of the asset freeze, and to encourage the court to certify questions to this court.

at 180-81, 394 P.3d at 953. The Nevada federal district court granted in part and denied in part the Magliarditis' motion for reconsideration, but held that the preliminary injunction would remain in place with regard to any of the Magliarditis' spendthrift trusts, asserting that the question of whether the alter ego doctrine applies to spendthrift trusts (as well as the other certified questions) were for this court to determine.[2] We answer the certified questions in turn.

*Alter ego claims – question one*

The first question asks whether a judgment creditor may bring a claim for alter ego to make a third party liable on the judgment or whether alter ego is only a remedy. The Nevada federal district court predicted that the alter ego doctrine can be a separate cause of action when the claim is filed as a means for a judgment creditor to pursue the execution of a prior judgment. We agree.

In *Callie v. Bowling*, we considered a judgment creditor who domesticated a foreign judgment in Nevada and attempted to add a nonparty to its final judgment using the alter ego doctrine simply by seeking to amend the judgment. 123 Nev. 181, 182-83, 160 P.3d 878, 878-79 (2007). The nonparty was neither served with pleadings nor individually named when the creditor domesticated the judgment but after an evidentiary hearing, the district court amended the judgment to make the nonparty

---

[2]In October 2018, the Magliarditis filed a status report with this court, informing it that in June 2018, Dominic filed for Chapter 7 bankruptcy. *See Magliarditi v. TransFirst Group, Inc.*, Docket No. 73889 (Appellants' Status Report, Oct. 19, 2018). The automatic stay in place was lifted by the bankruptcy court and we subsequently concluded that this case could proceed. *Magliarditi v. TransFirst Group, Inc.*, Docket No. 73889 (Order, Dec. 27, 2018).

personally liable for the judgment. *Id.* at 183, 160 P.3d at 879. This court concluded that such a mechanism violated the nonparty's due process rights and held that "judgment creditor[s] who wish[ ] to assert an alter ego *claim* must do so in an *independent action* against the alleged alter ego." *Id.* at 182, 160 P.3d at 879 (emphasis added). We also clarified our prior holding in *McCleary Cattle Co. v. Sewell*, 73 Nev. 279, 317 P.2d 957 (1957), and concluded "that a motion to amend a judgment is not the proper vehicle by which to allege an alter ego claim." *Callie*, 123 Nev. at 184-85, 160 P.3d at 880. We reasoned that a separate cause of action was necessary because the nonparty was an individual who may or may not have exercised the requisite degree of control over the debtor corporation at issue, and therefore the nonparty was entitled to due process to present a defense against alter ego liability. *Id.* at 186, 160 P.3d at 881.

Similarly, in *Mona v. Eighth Judicial District Court*, a judgment creditor domesticated a California judgment in Nevada against a debtor in his individual capacity and in his capacity as a trustee of a family trust—of which the California court found the debtor to be the alter ego of the family trust. 132 Nev. 719, 722-23, 380 P.3d 836, 839 (2016). Just before the judgment creditor domesticated the judgment, the debtor and his wife entered into a postmarital settlement agreement, dividing the proceeds of a corporate stock sale into their sole and separate property. *Id.* at 723, 380 P.3d at 839. After the judgment was domesticated, the district court ordered the debtor and his wife to appear for a judgment debtor examination and produce a number of documents pursuant to NRS 21.270. *Id.* The district court sanctioned the debtor and his wife for failing to disclose the postmarital agreement and the records for three bank accounts in the wife's name. *Id.* It also found that the creation of the postmarital

agreement was a fraudulent transfer pursuant to NRS Chapter 112 and that the judgment creditor could reach the property of the wife in the three undisclosed bank accounts in order to satisfy the judgment against the debtor. *Id.* The debtor and the wife filed a writ petition to this court seeking relief because the wife was not a party to the domesticated district court litigation. *Id.* In granting the writ as to the wife, this court looked to NRS 21.330 to conclude that when a third party possesses property of a judgment debtor but claims an adverse interest in the property, a court cannot simply order that the property be applied toward the judgment. *Id.* at 726-27, 380 P.3d at 841-42. "Instead, NRS 21.330 permits a judgment creditor to institute [*a separate*] *action* against the third parties with adverse claims to the property of a judgment debtor." *Id.* (alteration in original) (emphasis added) (quoting *Greene v. Eighth Judicial Dist. Court*, 115 Nev. 391, 395, 990 P.2d 184, 186 (1999)).

Our prior holdings in *Callie* and *Mona* demonstrate that a separate claim would be required to assure the nonparty is afforded due process. *Mona*, 132 Nev. at 726-27, 380 P.3d at 841-42; *Callie*, 123 Nev. at 186, 160 P.3d at 881; *see also In re Ward*, 558 B.R. 771, 788 (Bankr. N.D. Tex. 2016) ("[R]everse piercing is not an independent cause of action under Texas law and . . . the Plaintiff must either have a judgment in-hand or an underlying claim within the Complaint that would support a recovery under the reverse-piercing theory . . . ."); *Leek v. Cooper*, 125 Cal. Rptr. 3d 56, 71 (Ct. App. 2011) ("It is also possible for a party to bring a wholly separate action against the individual to enforce a prior judgment against the corporation on an alter ego theory."); *Pazur v. Belcher*, 612 S.E.2d 481, 483 (Ga. Ct. App. 2004) ("[T]he plaintiff's proper remedy was to 'pursue its claims against [the alter ego defendant] in a separate suit . . . to attempt to

pierce the corporate veil.") (alterations in original) (quoting *Oceanics Schools, Inc. v. Barbour*, 112 S.W.3d 135, 142 (Tenn. Ct. App. 2003)). While *Callie* and *Mona* were decided in the context of domesticating a foreign judgment, Nevada's Uniform Enforcement of Foreign Judgments Act does not require a judgment creditor to domesticate. Instead, "[a] judgment creditor may elect to bring an action to enforce his or her judgment instead of proceeding under NRS 17.330 to 17.440." NRS 17.390; *see also Maxus Liquidating Tr. v. YPF S.A.*, No. 18-50489, 2019 WL 647027, at *2 (Bankr. D. Del. Feb. 15, 2019) ("When coupled with allegations of another wrong, such as breach of fiduciary duty or a fraudulent conveyance, alter ego can constitute an independent claim."). Accordingly, a judgment creditor may bring a claim for alter ego to make a third party liable on a judgment.

*Limited liability companies and partnerships – questions two and three*

The second and third questions ask whether the alter ego doctrine applies to LLCs and partnerships. During the pendency of the case, we decided *Gardner v. Eighth Judicial Dist. Court*, which established that the alter ego doctrine applies to LLCs. 133 Nev. 730, 405 P.3d 651 (2017). This court proffered three reasons for concluding so. First, there exists a general consensus among state courts that the alter ego doctrine applies to LLCs, and this court, as well as other courts interpreting Nevada law, have assumed the alter ego doctrine applies to LLCs. *Id.* at 735-36, 405 P.3d at 655-56 (citing *Webb v. Shull*, 128 Nev. 85, 92 n.3, 270 P.3d 1266, 1271 n.3 (2012); *In re Giampietro*, 317 B.R. 841, 846 (Bankr. D. Nev. 2004)). Second, Nevada's LLC statutes were codified in 1991, ten years before the Legislature codified the alter ego doctrine for corporations in 2001. *Id.* at

736, 405 P.3d at 656 (citing NRS 78.747; 1991 Nev. Stat., ch. 442, at 1184).[3] Analyzing the legislative history, this court concluded that the Legislature's codification of the alter ego doctrine to *corporations* did not preclude by omission the application of the alter ego doctrine to LLCs. *Id.* Finally, pointing to nationwide recognition, LLCs afford the same opportunities for abuse and fraud as corporations, and therefore creditors of LLCs need the same opportunity to pierce the corporate veil as creditors of corporations when such fraud or abuse exists. *Id.* While *Gardner* does not explicitly apply to partnerships, we conclude the logic extends to these entities. *See Giampietro*, 317 B.R. at 847 ("Nowhere in the . . . legislative history, however, is there any indication of an intent to tighten or clarify alter ego liability for corporations while eliminating it for limited liability companies or any other limited liability entity (such as limited partnerships, limited-liability partnerships or limited-liability limited partnerships). Indeed, such a course would be counterproductive, in that it would disfavor the creating of corporations, which would lessen overall corporate franchise fee revenues."); *Sunrise Sec. Corp. v. Anzalone*, Docket No. 49052 (Order Reversing in Part and Affirming in Part, Feb. 5, 2009) (accepting the district court's application of the alter ego doctrine to a limited partnership). And the parties concede that *Gardner* resolves the certified questions as to these entities. Therefore, the alter ego doctrine applies to LLCs and partnerships.

*Nevada's Uniform Fraudulent Transfer Act – questions six and seven*

The sixth question asks whether an alter ego of a judgment debtor is a "debtor" under Nevada's Uniform Fraudulent Transfer Act (NUFTA). NUFTA defines a debtor as "a person who is liable on a claim."

---

[3]Nevada's corporation statutes explicitly codify the alter ego doctrine; our LLC statutes do not. *Compare* NRS 78.747, *with* NRS 86.371.

SUPREME COURT
OF
NEVADA

(O) 1947A

NRS 112.150(6). And a claim is "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." NRS 112.150(3). To prove that a debtor's transfer is fraudulent, it must be shown that the debtor made an actual fraudulent transfer, a constructive fraudulent transfer, or a transfer without receiving reasonably equivalent value. NRS 112.180(1)(a)-(b); NRS 112.190. The statute also provides a number of factors for courts to consider when determining whether a debtor acted with actual intent. *See* NRS 112.180(2). They are:

(a) The transfer or obligation was to an insider;

(b) The debtor retained possession or control of the property transferred after the transfer;

(c) The transfer or obligation was disclosed or concealed;

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) The transfer was of substantially all the debtor's assets;

(f) The debtor absconded;

(g) The debtor removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

> (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

NRS 112.180(2). Additionally, an "insider" is defined—if the debtor is a natural person—as a relative of a debtor, a partnership in which the debtor is a general partner, a general partner in such a partnership, and a corporation of which the debtor is a director, officer, or other controlling person. NRS 112.150(7)(a).

The Magliarditis assert that alter egos cannot be "debtors" under NUFTA because those entities are not actually liable on a claim. Instead, the true debtor is liable on the claim, and the alter egos are merely a means to reach the debtor's assets through a reverse piercing *remedy*. If an alter ego were a "debtor" under NUFTA, the Magliarditis assert, property of the alter ego would be considered an "asset" of the debtor, and this would impermissibly expand NUFTA's definition of "asset."[4]

But the legislative purpose of NUFTA is to "preserve a debtor's assets for the benefit of creditors" and "prevent a debtor from defrauding creditors by placing the subject property beyond the creditors' reach." *Herup v. First Boston Fin., LLC*, 123 Nev. 228, 232, 235 n.15, 162 P.3d 870, 872, 874 n.15 (2007). And this court has already recognized that "[i]n Nevada, a judgment debtor and his alter ego are *treated as identical* entities for the purposes of judgment execution." *Sunrise Securities Corp. v. Anzalone*, Docket No. 49052 (Order Reversing in Part and Affirming in Part,

---

[4]"Asset" is defined by NUFTA as "property of a debtor." NRS 112.150(2). However, the term does not include "(a) Property to the extent it is encumbered by a valid lien; (b) Property to the extent it is generally exempt under nonbankruptcy law; or (c) An interest in property held in tenancy by the entireties or as community property to the extent it is not subject to process by a creditor holding a claim against only one tenant." *Id.*

Feb. 5, 2009) (emphasis added) (citing *McCleary Cattle Co. v. Sewell*, 73 Nev. 279, 317 P.2d 957 (1957), *overruled on other grounds by Callie v. Bowling*, 123 Nev. 181, 160 P.3d 878 (2007)).

Further, other courts have concluded an alter ego of a judgment debtor is a "debtor" under their state UFTA laws. For example, in *In re Turner*, a bankruptcy trustee sought to avoid transfers from a debtor to a Nevada corporation and Nevada LLC he created as "actually fraudulent" and "constructively fraudulent" under federal bankruptcy fraudulent transfer law, 11 U.S.C. § 548 (2012), and California's Uniform Voidable Transactions Act, Cal. Civ. Code § 3439 (West 2016). 335 B.R. 140, 144, 146 (Bankr. N.D. Cal. 2005). The trial court found that all of the transfers were made with "actual intent" pursuant to the code, concluding that the transfers made by the debtor to his Nevada corporation and LLC were made to an "insider," that he "retained possession and control of the [property] after the all of the transfers," that he had been sued before most of the transfers, that he received no consideration for the transfers, and that he was rendered insolvent by the transfers. *Id.* at 146 & n.7 (referencing a list of factors for courts to consider whether a transfer was made with actual intent pursuant to California's fraudulent transfer law (citing Cal. Civ. Code § 3439.04)). These indicators of actual intent to defraud, in California's code are virtually identical to the "actual intent" factors in NUFTA. *Id.*; *compare* NRS 112.180(2)(a)-(k), *with* Cal. Civ. Code § 3439.04(b)(1)-(11). The court also concluded that the LLC and corporation were the debtor's alter egos, and that transfers made by those entities could be considered fraudulent transfers of the judgment debtor and therefore properly avoided. *In re Turner*, 335 B.R. at 147. The Ninth Circuit relatedly held that a corporation created by a judgment debtor to insulate the debtor's

assets was the debtor's alter ego, concluding that a fraudulent transfer *by an alter ego* could be treated as a fraudulent transfer by the judgment debtor. *Fleet Credit Corp. v. TML Bus Sales, Inc.*, 65 F.3d 119, 120-22 (9th Cir. 1995) (applying California's fraudulent transfer law).

Similarly, the Alabama Supreme Court held that under Alabama's UFTA (AUFTA), a judgment debtor and its alter ego company could be considered "one and the same" at the time of a transfer, and therefore a transfer of the alter ego's property is a transfer "made by the debtor" under the AUFTA. *Thompson Props. v. Birmingham Hide & Tallow Co.*, 839 So. 2d 629, 633-34 (Ala. 2002). And in *Dwyer v. Meramec Venture Associates, LLC*, the Missouri Court of Appeals held that a transfer by a judgment debtor's alter ego constitutes a transfer by the judgment debtor himself. 75 S.W.3d 291, 295 (Mo. Ct. App. 2002); *see also U.S. Capital Funding VI, Ltd. v. Patterson Bankshares, Inc.*, 137 F. Supp. 3d 1340, 1366-67 (S.D. Ga. 2015) ("[A] transfer carried out by an 'alter ego' or a 'mere instrumentality' of a judgment debtor is sufficient to constitute a transfer by the debtor itself."); 37 C.S.J. *Fraudulent Conveyances* § 21 (2017) ("A fraudulent conveyance can occur even if the debtor is not a party to the conveyance or did not carry it out, as in a transfer by the debtor's alter ego or mere instrumentality of a judgment debtor."); Peter Spero, *Fraudulent Transfers, Prebankruptcy Planning and Exemptions* § 1:16 n.6 (August 2018 update) (collecting cases).

The legislative history of UFTA—the federal parent of NUFTA—further bolsters this position. The purpose of UFTA is to "[p]rovid[e] a creditor with the capacity to procure assets a debtor has transferred to another person to keep them from being used to satisfy the debt." Hearing on A.B. 60 Before the Assembly Comm. on Judiciary, 64th

SUPREME COURT
OF
NEVADA

(O) 1947A

Leg. (Nev., Feb. 3, 1987) (Exhibit C-7). Further, the "badges of fraud" articulated in NRS 112.180(2)(a)-(k) "were written with a mind toward *limiting* the transferor's rights to deal with his property as against his creditors." *See* Brian M. Streicher, Husky Int'l Elecs., Inc. v. Ritz *and the Problem of Intent in Receiving Fraudulent Transfers*, Florida Bar Journal, Jan. 2017, at 8, 13 (emphasis added). The persuasiveness of these authorities and the plain language of NUFTA's definitions for "debtor" and "claim," NRS 112.150(3), (6), as well as the factors used to consider whether a debtor acted with "actual intent," NRS 112.180(2), demonstrate that an alter ego is a "debtor" under NUFTA.

The seventh and final question asks whether a transfer between alter egos or between the judgment debtor and an alter ego is a "transfer" under NUFTA. As an initial matter, NUFTA defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." NRS 112.150(12).

The Magliarditis assert that under NUFTA, a transfer must be from a debtor to a third person, not from a debtor to a debtor, relying on NRS 112.200(4) which states that "[a] transfer is not made until the debtor has acquired rights in the asset transferred." They reason that because the alter ego doctrine is merely an equitable remedy to satisfy an existing debt, it cannot be used to dictate who has title to an asset at the time of a transfer. Therefore, the Magliarditis argue, a transfer made between alter egos cannot be linked to the debtor—an equitable remedy like alter ego cannot decide title at the time of the transfer.

SUPREME COURT
OF
NEVADA

(O) 1947A

13

However, jurisdictions that have found an alter ego may be a "debtor" for purposes of UFTA, likewise have found that transfers made to or between such alter egos are "transfers" under UFTA. For example, the Alabama Supreme Court held in *Thompson Properties* that a transfer of property made by a judgment debtor's alter ego was considered a transfer of the debtor. 839 So. 2d at 634. And "many states, including Georgia, have found that a 'transfer' may occur even if the debtor was not a party to, or did not carry out, the transfer." *U.S. Capital Funding VI*, 137 F. Supp. 3d at 1366; *see also Sherry v. Ross*, 846 F. Supp. 1424, 1428 (D. Haw. 1994) (stating that under Hawaii's UFTA, a fraudulent conveyance can occur even if the debtor is not a party to the conveyance); 37 C.J.S. Fraudulent Conveyances, § 21. As we are compelled to conclude that an alter ego may be a "debtor" under UFTA, we are likewise compelled to conclude that transfers to or between alter egos can be "transfers" under UFTA.

*Trusts & Spendthrift Trusts – questions four and five*

Questions four and five relate to whether alter ego applies to trusts and spendthrift trusts. NRAP 5(a), in pertinent part, provides:

> The Supreme Court may answer questions of law certified to it by . . . a United States District Court . . . when requested by the certifying court, if there are involved in any proceeding before those courts questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court or Court of Appeals of this state.

Thus, pursuant to NRAP 5, the court is constrained to answer only questions of law that may be determinative to a cause pending in the certifying court. Since we are unable to glean from the record provided the nature of the trusts involved, it is unclear to the court whether these two

questions of law may be determinative to the pending cause. Accordingly, we decline to answer these two questions in the absence of further clarification from the certifying court.

*Conclusion*

In sum, we conclude that a judgment creditor may bring a claim for alter ego to make a third party liable on the judgment, and the alter ego doctrine applies to limited liability companies (LLCs) and partnerships. Additionally, an alter ego of a judgment debtor is a "debtor" under Nevada's Uniform Fraudulent Transfer Act (NUFTA), and a transfer between alter egos or between the judgment debtor and an alter ego is a "transfer" under NUFTA. However, because it is unclear from the record the nature of the trusts at issue, we decline to answer certified questions four and five and remand for the United States District Court for the District of Nevada to provide any further clarification it may deem appropriate.

It is so ORDERED.

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

SUPREME COURT
OF
NEVADA

(O) 1947A

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

cc:    Dominic J. Magliarditi
       Cook & Kelesis
       Reese Marketos LLP
       King & Durham PLLC
       Goldsmith & Guymon, P.C.
       Maupin, Cox & LeGoy