MICHAEL CALLIE, APPELLANT, v. FAYE BOWLING, AKA
FAYE BOLLING, RESPONDENT.

No. 46379

June 28, 2007                                      160 P.3d 878

*Feldman Graf* and *David J. Feldman*, Las Vegas, for Appellant.

*Kent L. Ivey*, Las Vegas, for Respondent.

---

Before the Court EN BANC.

## OPINION

By the Court, HARDESTY, J.:

In this appeal, we consider whether a judgment creditor in a domesticated foreign judgment may add a nonparty to a final judgment, under the alter ego doctrine, simply by moving to amend the judgment. We conclude that such a procedure violates the due process rights of the nonparty whom the creditor seeks to add. Instead, to observe the requisite attributes of due process, a judgment creditor who wishes to assert an alter ego claim must do so in an independent action against the alleged alter ego. Because the correct procedure was not followed in the present case, we vacate the district court's amended domesticated foreign judgment.

### FACTS AND PROCEDURAL HISTORY

Appellant Michael Callie was the president and a director of ITB Productions, Inc., a now-defunct Nevada corporation. Respondent Faye Bowling had an employment agreement with ITB. In 2000, Bowling filed a claim for arbitration in California, alleging that ITB had failed to make certain payments to her under the employment contract. The Los Angeles Office of the American Arbitration Association found for Bowling on her claim, and in 2001, a California trial court entered judgment on the arbitration award. ITB was the named defendant/respondent in both proceedings. Callie, in his individual capacity, was not named as a party or

served with a summons or a copy of the complaint in the California proceedings.

In 2002, Bowling registered the California judgment in Nevada as a foreign judgment. The Nevada district court then domesticated the judgment. However, Callie was not individually named or served with pleadings filed as part of Bowling's efforts to domesticate the judgment.

In 2005, having encountered some difficulties in her collection efforts, Bowling filed a motion with the Nevada district court to amend the domesticated judgment to add Callie as a party under an alter ego theory. The district court conducted an evidentiary hearing on the motion but did not issue formal findings of fact or conclusions of law. Nevertheless, the court determined that there was sufficient evidence to find that Callie was an alter ego of ITB. Accordingly, the district court granted Bowling's motion and amended the judgment to make Callie personally liable for the judgment.

Callie now appeals the district court's order granting Bowling's motion and amending the domesticated foreign judgment to add him as an alter ego of ITB. Callie argues that his constitutional due process rights were violated when he was added to the judgment as an alter ego because he did not participate in the underlying proceedings and was never served with summons and a copy of the complaint.

## DISCUSSION

This court applies a de novo standard of review to constitutional challenges.[1] Both the United States Constitution and the Nevada Constitution guarantee that a person must receive due process before the government may deprive him of his property.[2] This court has recognized that procedural due process "requires notice and an opportunity to be heard."[3]

The record in this case indicates that Callie was not individually named in any complaint and was never served with summons or any complaint in Nevada or California, even though multiple proceedings occurred in both states. Instead, in the Nevada proceedings, the district court simply granted Bowling's motion to amend

---

[1]*Rico v. Rodriguez*, 121 Nev. 695, 702, 120 P.3d 812, 817 (2005).

[2]U.S Const. amend. XIV, § 1 ("nor shall any State deprive any person of life, liberty, or property, without due process of law"); Nev. Const. art. 1, § 8(5) ("No person shall be deprived of life, liberty, or property, without due process of law.").

[3]*Maiola v. State*, 120 Nev. 671, 675, 99 P.3d 227, 229 (2004); *see also Browning v. Dixon*, 114 Nev. 213, 217, 954 P.2d 741, 743 (1998). In addition, both Nevada and California require that a defendant receive written notice of a pending action. NRCP 4(a); Cal. Civ. Proc. Code § 412.20(a) (West 2004).

the domesticated foreign judgment to add Callie as an alter ego of ITB and thereby rendered him individually liable on the judgment. Thus, Callie never received notice and an opportunity to be heard before he was rendered individually liable on the domesticated foreign judgment—a deprivation of his property. Callie's due process rights were, as a consequence, violated. The only method by which Bowling could have asserted her alter ego claim without jeopardizing Callie's due process rights was through an independent action against Callie with the appropriate notice.

Bowling does not dispute that Callie was not individually named in a complaint and that he never received summons or a copy of the complaint in his individual capacity. Instead, Bowling argues that by granting her motion to amend the judgment to add Callie as an alter ego, the district court merely identified Callie as the real defendant, since Callie and ITB were identical entities. Bowling further contends that under our 1957 holding in *McCleary Cattle Co. v. Sewell*,[4] judgment creditors may add nonparties to the judgment under the alter ego doctrine by simply moving to amend a domesticated judgment. We reject Bowling's argument that this procedure is proper and take this opportunity to modify our holding in *McCleary Cattle* to the extent that it sanctions the procedure outlined by Bowling to add a nonparty to a domesticated judgment.

In *McCleary Cattle*, the respondents obtained a judgment in Washington against a Washington timber corporation. As part of their collection effort, the respondents sought to execute upon the assets of the appellant, a Nevada cattle corporation, claiming that it was the alter ego of the timber corporation. The record indicated that Frank McCleary, the president of both corporations, and Catherine McCleary owned all stock in both corporations and that the number of shares in each corporation was identical. Additionally, before the timber company's charter was revoked, its assets, which amounted to several million dollars, were transferred to the cattle company. Furthermore, the cattle company bore the costs of the timber company's litigation with the respondents.[5]

Following a hearing, the district court determined that the cattle corporation was the alter ego of the timber corporation. Based on that determination, the district court issued an order allowing the respondents to execute upon the cattle corporation's assets as part of their efforts to collect the judgment against the timber corporation.[6]

The cattle corporation appealed, arguing that the only proper method by which its assets could be subjected to a judgment against the timber corporation was in the context of an independ-

[4]73 Nev. 279, 317 P.2d 957 (1957).

[5]*Id.* at 281-82, 317 P.2d at 958-59.

[6]*Id.* at 281, 317 P.2d at 958.

ent action against the cattle corporation itself.[7] This court held that an independent action was not necessary under the circumstances of that case because the respondents were not seeking to execute upon assets in the hands of a third party or to substitute or add a new party to the original action.[8] Rather, this court held that by applying the alter ego doctrine, the district court had merely recognized that the two corporations were identical, thereby correcting a misnomer wherein only one corporation was originally named as a judgment debtor.[9]

Given our holding in *McCleary Cattle*, it is understandable that the district court in the present case allowed Bowling to add Callie to the domesticated judgment by simply moving to amend the judgment, rather than by arguing her alter ego claim in an independent action against Callie. *McCleary Cattle*, however, is misleading insofar as it indicates that the procedure followed in that case is appropriate. We now clarify that a motion to amend a judgment is not the proper vehicle by which to allege an alter ego claim. To the extent that *McCleary Cattle* implies that a party may assert an alter ego claim by motion as part of a collection effort, rather than through an independent action with notice and service of process, we overrule that case.[10]

A party who wishes to assert an alter ego claim must do so in an independent action against the alleged alter ego with the requisite notice, service of process, and other attributes of due process. When the judgment creditor employs the proper procedure, the defendant who is subject to the alter ego claim is assured a full opportunity of notice, discovery, and an opportunity to be heard before potentially being found liable. The failure to abide by this procedure results in a deprivation of due process.

In the present case, the parties did not follow this procedure and Callie's due process rights were violated as a consequence. This becomes even clearer when the factual circumstances in *McCleary*

---

[7]*Id.*

[8]*Id.* at 282, 317 P.2d at 959.

[9]*Id.* at 283, 317 P.2d at 959 (citing *Mirabito v. San Francisco Dairy Co.*, 47 P.2d 530, 532 (Cal. Dist. Ct. App. 1935)).

[10]In *Greene v. District Court*, we recognized the general rule that a judgment creditor must file a separate action in proceedings for garnishment or attachment. 115 Nev. 391, 394, 990 P.2d 184, 185 (1999). In *Greene*, we also noted the exception in *McCleary* for circumstances in which a complaint is amended post-judgment to add certain individuals as alter egos of the judgment debtor. *Id.* at 394 n.1, 990 P.2d at 185 n.1. However, as we have clarified today, that exception no longer exists. Consequently, whenever a judgment creditor seeks to collect on a judgment from a nonparty, the judgment creditor must file an independent action.

*Cattle* are compared with those in the present case. In *McCleary Cattle*, the cattle company, which bore the costs of litigation against the timber company, eventually received all of the timber company's assets. Here, even though Callie was the president and a director of the corporation, he did not personally bear the costs of Bowling's litigation against ITB, nor did he transfer ITB's assets to himself, even after ITB was dissolved. In *McCleary Cattle*, one corporation was used specifically to salvage the assets of another corporation, but Callie was an individual who may or may not have exercised the same degree of control over the sole corporation at issue in this case. Without formal notice and service of process, Callie was deprived of the opportunity to present a defense and argue any such distinctions. This is why a defendant who is subject to a judgment creditor's alter ego claim must receive, in an independent action, formal notice, service of process, an opportunity to conduct discovery, fact-finding, and an opportunity to be heard, before the claim is resolved. Under this constitutionally mandated construct, we conclude that the district court improperly granted Bowling's motion to amend the judgment.[11]

## CONCLUSION

Because Callie did not receive notice and was not the subject of an independent action with respect to Bowling's alter ego claim, we conclude that the district court erred by granting Bowling's motion to amend the domesticated foreign judgment to add Callie, in his individual capacity, as an alter ego of ITB. Accordingly, we vacate the district court's amended domesticated foreign judgment.

MAUPIN, C. J., GIBBONS, PARRAGUIRRE, DOUGLAS, CHERRY and SAITTA, JJ., concur.

---

[11]Callie also argues that there was insufficient evidence to demonstrate that he was the alter ego of ITB. In view of our holding, we decline to address this argument.