HANS JOSEPH HERUP AND HERUP HOLDINGS, LLC, APPELLANTS/CROSS-RESPONDENTS, *v.* FIRST BOSTON FINANCIAL, LLC, A WYOMING LIMITED LIABILITY COMPANY, RESPONDENT/CROSS-APPELLANT.

No. 45773

July 26, 2007                                    162 P.3d 870

*Robert C. Herman*, Carson City, for Appellants/Cross-Respondents.

*Brooke Shaw Zumpft* and *Michael L. Matuska*, Minden, for Respondent/Cross-Appellant.

Before PARRAGUIRRE, HARDESTY and SAITTA, JJ.

## OPINION

By the Court, HARDESTY, J.:

In this case, we consider whether the Uniform Fraudulent Transfer Act (UFTA), NRS Chapter 112, was properly applied to a se-

cured creditors' transfer of assets to a third party following the secured creditors' improper repossession of their business. We also take this opportunity to examine the standard to be used in determining whether a transferee has a good faith defense to a fraudulent transfer action under the UFTA. We adopt an objective, rather than a subjective, inquiry into whether the transferee knew or should have known of the debtor's fraudulent purpose in transferring the assets. But here, because we conclude that the district court failed to determine whether a fraudulent transfer under the UFTA occurred in the first instance, we reverse the district court's judgment as to the third party and remand this case for a new trial.

## FACTS AND PROCEDURAL HISTORY

This appeal and cross-appeal arise out of a dispute over the sale, repossession, and subsequent resale of a small business by its original owners. Ralph and Penny Grant sold the assets, including the goodwill and customer base, of Nevada Small Engines for $250,000 to respondent/cross-appellant First Boston Financial, LLC. First Boston paid $70,000 at the close of escrow and executed a promissory note for $180,000 payable in monthly installments. First Boston made the first four payments, but was late making the fourth payment. Apparently, because of the late payment and without giving notice to First Boston, the Grants immediately repossessed the business and began operating it again themselves. First Boston filed a complaint against the Grants, alleging breach of contract and conversion.[1]

While that action was pending, the Grants sold the business, through a private sale, to appellants/cross-respondents Hans Joseph Herup and Herup Holdings, LLC (Herup) for $199,060.88 in cash. Before the sale, the Grants and Herup executed an addendum to the purchase agreement, which referenced "pending litigation" as follows:

> Buyer is aware of pending litigation between the Seller herein and the former Buyers of Nevada Small Engines, Gardnerville, Nevada, which has no legal effect on the current business assets or operation. Seller herein indemnifies Buyer herein from any liability of such litigation.

The escrow instructions included the same clause. After the Grants sold the business to Herup, First Boston amended its complaint to add a fraudulent transfer claim against Herup.[2] First Boston specif-

---

[1]First Boston also sought a temporary restraining order prohibiting the Grants from selling the repossessed business to a third party. Unfortunately, the district court did not entertain the request for over a year and entered a temporary restraining order after the Grants had already resold the business.

[2]The complaint did not state the statutory basis for First Boston's fraudulent transfer cause of action. Nevertheless, the parties litigated the claim as one for fraudulent transfer under NRS Chapter 112, the UFTA.

ically sought to void the transfer between the Grants and Herup. First Boston also sought compensatory and punitive damages and injunctive relief as part of its fraudulent transfer claim. In the district court, Herup defended on the ground that he was a good faith purchaser for value, thereby precluding a judgment against him under the UFTA.

At some point during the course of litigation and before trial, the Grants disappeared. Given their failure to comply with requests for admissions, the district court granted partial summary judgment to First Boston on the liability portion of its breach of contract and conversion claims against the Grants and conducted a bench trial on the issues of the Grants' damages and Herup's liability and damages.[3]

Following the trial, the district court found that Herup was on inquiry notice of First Boston's claim because of the addendum to his contract with the Grants and, thus, could not establish a good faith defense under the UFTA. The district court then allocated damages between the Grants and Herup, finding that returning the business to First Boston would be unfair because of the passage of time and because First Boston never fully paid for the business. Herup was assessed damages of approximately $81,000, and the Grants were held liable for over $336,000.

Herup appeals, claiming that he should not have been subject to any damages because he acted in good faith in purchasing the business. First Boston cross-appeals, arguing that Herup should be liable in the amount of $199,060.88, the purchase price Herup paid to the Grants.

## DISCUSSION

This case requires us to interpret and apply the UFTA, which Nevada has adopted and codified in NRS Chapter 112. While we will not disturb a district court's findings of fact if they are sup-

---

[3]While the district court, under NRCP 36(a), properly deemed that the Grants had admitted the matters contained in the requests for admissions, NRCP 36(b) allows the admissions to be used only against the party making them. *See La-Tex Partnership v. Deters*, 111 Nev. 471, 477, 893 P.2d 361, 365 (1995) (concluding that deemed admissions of individual defendants were not binding on other defendants); *United States v. Wheeler*, 161 F. Supp. 193, 198 (W.D. Ark. 1958) (similar decision in federal case). Specifically, NRCP 36(b) provides that "[a]ny admission made by a party under this rule is for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding." In the instant case, First Boston's claims against the Grants are distinct from its claim against Herup, and the requests for admissions were directed solely to the Grants. Consequently, First Boston was required to prove all elements necessary to its claim against Herup for fraudulent transfer, including the Grants' purpose in making the transfer to Herup.

ported by substantial evidence,[4] the construction of a statute is a question of law, which we review de novo.[5]

We conclude that the district court failed to determine, as required by the UFTA, whether a fraudulent transfer occurred under NRS 112.180(1)(a), which is a prerequisite to setting aside the transfer or imposing damages, and whether Herup acted in good faith. Consequently, we reverse the district court's judgment with respect to First Boston's claims against Herup and remand this matter for a new trial against Herup only.[6] We also take this opportunity to clarify the standard to be used when evaluating a transferee's good faith defense to a fraudulent transfer claim under the UFTA and adopt an objective standard.

### Prima facie case of fraudulent transfer

The UFTA is designed to prevent a debtor from defrauding creditors by placing the subject property beyond the creditors' reach. At the outset, we note that the district court never specifically determined that the Grants, who were initially secured creditors with respect to First Boston's promissory note, became "debtors" liable on a "claim" to First Boston within the meaning of the UFTA when they repossessed the business.[7] However, the district court did state that the Grants "wrongfully foreclosed upon the business and repossessed its assets" and that they "did not have legal right to take possession, much less sell the property."

When reviewing a district court's judgment, we apply the rules of construction that pertain to interpreting other written instruments.[8] We have previously explained that when unclear, a judgment's interpretation is a question of law for this court.[9] Additionally, we have stated that a judgment's legal effect must be determined by construing the judgment as a whole, and that, in the case of an ambiguity, the interpretation that renders the judgment more reasonable and conclusive and brings the judgment into har-

---

[4]*Pandelis Constr. Co. v. Jones-Viking Assoc.*, 103 Nev. 129, 130, 734 P.2d 1236, 1237 (1987); *Hobson v. Bradley & Drendel, Ltd.*, 98 Nev. 505, 506-07, 654 P.2d 1017, 1018 (1982).

[5]*State, Dep't of Mtr. Vehicles v. Lovett*, 110 Nev. 473, 476, 874 P.2d 1247, 1249 (1994).

[6]The Grants have not appealed, and our reversal and remand does not invalidate the district court's judgment against the Grants.

[7]*See* NRS 112.150.

[8]*Benavidez v. Benavidez*, 145 P.3d 117, 120 (N.M. Ct. App. 2006).

[9]*Ormachea v. Ormachea*, 67 Nev. 273, 291, 217 P.2d 355, 364 (1950); *University & Cmty. Coll. Sys. v. Sutton*, 120 Nev. 972, 985-86, 103 P.3d 8, 17 (2004).

mony with the facts and law of the case will be employed.[10] Construing the order as a whole here, we conclude the district court found that a creditor-debtor relationship existed between First Boston and the Grants.

Three types of transfers may be set aside under the UFTA: (1) actual fraudulent transfers;[11] (2) constructive fraudulent transfers;[12] and (3) certain transfers by insolvent debtors.[13] In its conclusions of law, the district court cited only the statutory provision concerning actual fraudulent transfers, NRS 112.180(1)(a), which provides that

> [a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> (a) With actual intent to hinder, delay or defraud any creditor of the debtor . . . .

NRS 112.180(2) sets forth several factors that the district court may consider in determining a debtor's actual intent, including whether:

> (a) The transfer or obligation was to an insider;
>
> (b) The debtor retained possession or control of the property transferred after the transfer;
>
> (c) The transfer or obligation was disclosed or concealed;

---

[10]*Ormachea*, 67 Nev. at 291-92, 217 P.2d at 364-65.

[11]NRS 112.180(1)(a).

[12]NRS 112.180(1)(b). A transfer is constructively fraudulent if the debtor transfers the property without receiving a reasonably equivalent value in exchange for the transfer, and the debtor (1) was engaged in a transaction for which his remaining assets were unreasonably small in relation to the transaction or (2) reasonably should have believed that he would incur debts beyond his ability to pay. NRS 112.180(1)(b). It does not appear that this statutory provision is applicable here, as the district court could not determine whether the purchase price paid by Herup to the Grants represented the true market value of the business.

[13]NRS 112.190. A fraudulent transfer by an insolvent debtor occurs in two situations: (1) when the debtor makes the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation, NRS 112.190(1); and (2) when an insolvent debtor makes a transfer on an antecedent debt to an insider who had reason to believe the debtor was insolvent, NRS 112.190(2). It appears that this statutory provision, as well, is not applicable here. Again, the district court did not determine whether the Grants received a reasonably equivalent value for the transfer of the business to Herup and nothing in the record suggests that Herup was an insider. First Boston also failed to present any evidence to the court below that the Grants were insolvent, as defined by NRS 112.160, nor did the district court make any findings with respect to the Grants' insolvency.

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e) The transfer was of substantially all the debtor's assets;

(f) The debtor absconded;

(g) The debtor removed or concealed assets;

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k) The debtor transferred the essential assets of the business . . . .

While several of these factors may be relevant here, the district court failed to document its findings, if any, with regard to the Grants' actual intent to defraud First Boston.

Indeed, the district court erroneously concluded that the Grants' intent was not at issue, stating that ''[t]he parties stray from the fundamental issue in this case when they argue about the intent to defraud. [First Boston] does not have to prove that the Grants or Herup intended to defraud [First Boston] to recover the property.'' To the contrary, NRS 112.180(1)(a) plainly provides that, for the district court to enter judgment in favor of a creditor under that statute, it must first determine whether the debtor ''*actual*[*ly*] *inten*[*ded*] to hinder, delay or defraud any creditor of the debtor.'' (Emphasis added.) Because the district court made no such determination here and failed to consider the factors set forth in NRS 112.180(2), we reverse the district court's judgment as to Herup and remand this matter to the district court for a new trial.

*Good faith*

Even if we were to assume that the district court properly found that the Grants actually intended to defraud First Boston under NRS 112.180(1)(a), the district court failed to properly consider Herup's good faith defense. NRS 112.220(1) provides a complete defense for an action for avoidance under NRS 112.180(1)(a) and states,

A transfer or obligation is not voidable under paragraph (a) of subsection 1 of NRS 112.180 against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee.[14]

While the district court considered Herup's good faith defense in the proceedings below, the court, in concluding that Herup was not

[14]NRS 112.220(1).

a good faith purchaser, referred to concepts of negligence, bona fide purchaser status, bad faith, and good faith. Further, the district court did not determine whether Herup had paid reasonably equivalent value for the repossessed business.

We have not previously discussed the standard to be applied in determining good faith within the meaning of NRS 112.220(1). While this concept of a good faith transferee is embodied in the UFTA,[15] it is not defined. Thus, we take this opportunity to clarify the standard to be applied in determining when good faith has been established to provide a complete defense to an action for avoidance under the UFTA.

Herup asks this court to adopt the standard stated in *Park Hill Corp. v. Sharp*, wherein a Washington appellate court held that a money judgment may only be awarded "against a transferee if the transferee 'knowingly accepted the property with an intent to assist the debtor in evading the creditor'" and place the transferred assets beyond the creditor's reach.[16] Herup, however, overlooks that in *Eagle Pacific v. Christensen Motor Yacht*, a different division of the Washington appellate court rejected the *Park Hill* holding and concluded that the plain language of the UFTA permits entry of judgment even without proof that the transferee knowingly accepted the property and intended to assist the debtor in evading the creditor.[17]

---

[15]NRS 112.220(1); Unif. Fraudulent Transfer Act § 8(a), 7AII U.L.A. 13, 178 (2006).

Herup takes issue with the district court's and First Boston's reliance on cases addressing the good faith standard under § 548 of the United States Bankruptcy Code in determining the appropriate test under the UFTA. We conclude, however, that these cases are instructive for two reasons. First, the underlying policy of both the UFTA and the Bankruptcy Code is to preserve a debtor's assets for the benefit of creditors. Second, the language of the UFTA and § 548 are nearly identical. Considering the similarities in purpose and language, many courts "have concluded that the UFTA and § 548 are *in pari materia*, and that the same analysis applies under both laws." *In re Tiger Petroleum Co.*, 319 B.R. 225, 232 (Bankr. N.D. Okla. 2004) (citing *In re Grandote Country Club Company, Ltd.*, 252 F.3d 1146, 1152 (10th Cir. 2001); *In re United Energy Corp.*, 944 F.2d 589, 594 (9th Cir. 1991); *In re First Commercial Management Group, Inc.*, 279 B.R. 230, 240 (Bankr. N.D. Ill. 2002) ("Except for different statutes of limitations, the [Illinois] and federal statutes are functional equivalents, and the analysis applicable [under federal law] is also applicable [under Illinois law]."); *In re Spatz*, 222 B.R. 157, 164 (Bankr. N.D. Ill. 1998) ("Because the provisions of the UFTA parallel § 548 of the Bankruptcy Code, findings made under the Bankruptcy Code are applicable to actions under the UFTA.")). We find the reasoning behind these cases persuasive and, therefore, will consider cases addressing the good faith standard under the Bankruptcy Code to determine the appropriate standard to apply under Nevada's version of the UFTA.

[16]803 P.2d 326, 328 (Wash. Ct. App. 1991) (quoting *Deyong Management, Ltd. v. Previs*, 735 P.2d 79, 83 (Wash. Ct. App. 1987)).

[17]934 P.2d 715, 720 (Wash. Ct. App. 1997), *aff'd*, 959 P.2d 1052 (Wash. 1998).

Faced with this split of authorities in a case addressing Washington's version of the UFTA, the United States Court of Appeals for the Fifth Circuit determined that *Eagle Pacific* was more consistent with the plain language of the UFTA.[18] Additionally, the Fifth Circuit noted that "this provision of the UFTA . . . is 'virtually identical' to the corresponding provision of the Bankruptcy Code, 11 U.S.C. § 548, and cases interpreting that statute are consistent with the interpretation arrived at in *Eagle Pacific*."[19] The Fifth Circuit court cited cases in which courts have held that "good faith is determined by looking at what the transferee 'objectively knew or should have known instead of examining the transferee's actual knowledge from a subjective standpoint.'"[20]

A majority of courts applying the UFTA hold that a transferee must prove that he received the transfer in objective good faith.[21] That is, good faith must be determined on a case-by-case basis by examining whether the facts would have caused a reasonable transferee to inquire into whether the transferor's purpose in effectuating the transfer was to delay, hinder, or defraud the transferor's

[18]*Warfield v. Byron*, 436 F.3d 551, 557-58 (5th Cir. 2006).

[19]*Id.* at 558 (footnote omitted) (citing *In re Ramirez Rodriguez*, 209 B.R. 424 (Bankr. S.D. Tex. 1997); *In re World Vision Entertainment, Inc.*, 275 B.R. 641, 658 (Bankr. M.D. Fla. 2002); *In re Carrozzella & Richardson*, 286 B.R. 480, 485-86 (Bankr. D. Conn. 2002)).

[20]*Id.* at 560 (quoting *In re Sherman*, 67 F.3d 1348, 1355 (8th Cir. 1995)).

[21]*Warfield*, 436 F.3d at 558-59 (addressing the Washington Uniform Fraudulent Transfer Act); *In re Agricultural Research and Technology Group*, 916 F.2d 528, 535-36 (9th Cir. 1990) (concluding that in determining whether a transferee received an allegedly fraudulent transfer in good faith under Hawaii law, courts must look to what the transferee objectively knew or should have known, instead of examining what transferee actually knew from subjective standpoint, and citing early Supreme Court cases interpreting good faith defense provisions within previous fraudulent conveyance statutes (citing *Harrell v. Beall*, 84 U.S. 590 (1873); *Shauer v. Alterton*, 151 U.S. 607, 621 (1894))); *In re Tiger Petroleum Co.*, 319 B.R. at 235-36 (stating that the good faith for value defense must be established using an objective standard under the Oklahoma Uniform Fraudulent Transfer Act); *In re Jones*, 184 B.R. 377, 388 (Bankr. D.N.M. 1995) (concluding that transferees could not make out a good faith defense under the New Mexico Uniform Fraudulent Transfer Act when the transferees had reason to know of pending litigation); *Hall v. World Sav. and Loan Ass'n*, 943 P.2d 855, 860 (Ariz. Ct. App. 1997) (providing that a transferee must take the asset without notice, either actual or constructive, of any fraud under the Arizona Uniform Fraudulent Transfer Act); *see also In re M & L Business Machine Co., Inc.*, 84 F.3d 1330, 1338 (10th Cir. 1996) (addressing good faith under the Bankruptcy Code); *In re Sherman*, 67 F.3d 1348, 1355 (8th Cir. 1995) (stating that "a transferee does not act in good faith when he has sufficient knowledge to place him on inquiry notice of the debtor's possible insolvency" under the Bankruptcy Code).

creditors.[22] Constructive notice may be inferred from knowledge of facts that impose a duty to inquire.[23] While a transferee's lack of actual knowledge of the transferor's fraudulent purpose is relevant to determining whether the transferee received the transferred property in objective good faith, that fact alone is not dispositive.[24]

NRS 112.250 directs this court to apply and construe the UFTA in Nevada "to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it." Given the Legislature's intent that this court interpret the UFTA in Nevada to conform to other states' interpretations of their respective versions of the UFTA, we conclude that, in order to establish a good faith defense to a fraudulent transfer claim, the transferee must show objectively that he or she did not know or had no reason to know of the transferor's fraudulent purpose to delay, hinder, or defraud the transferor's creditors. Accordingly, on remand, the district court must determine whether the Grants made a fraudulent transfer under the UFTA, whether Herup acted in objective good faith in purchasing the business from the Grants, and whether Herup paid reasonably equivalent value for the business for purposes of the good faith defense under NRS 112.220(1).[25]

## CONCLUSION

We conclude that the district court failed to make specific findings of fact with respect to whether the Grants' transfer of the busi-

---

[22]See, e.g., In re Agricultural Research and Technology Group, 916 F.2d at 535-36; In re Cohen, 199 B.R. 709, 719 (B.A.P. 9th Cir. 1996); U.S. v. Romano, 757 F. Supp. 1331, 1338 (M.D. Fla. 1989), aff'd, 918 F.2d 182 (11th Cir. 1990); In re Lake States Commodities, Inc., 253 B.R. 866, 878 (Bankr. N.D. Ill. 2000).

[23]Hall, 943 P.2d at 860 (citing High v. Davis, 584 P.2d 725, 735 (Or. 1978)).

[24]In re Tiger Petroleum Co., 319 B.R. at 235-36.

[25]On cross-appeal, First Boston argues that Herup should be jointly and severally liable in the amount $199,060.88—the purchase price paid by Herup. In its order, the district court indicated that it would not award First Boston a "windfall" by returning the business to First Boston; that the sale of the business to Herup for $199,060.88 did not necessarily reflect the true market value at the time of the Grant-Herup transfer; that it lacked sufficient evidence to determine the value of the assets at the time of the Grant-Herup transfer; and that, therefore, it would only order Herup to pay the amount it could determine was lost by First Boston as a result of the repossession and subsequent sale by the Grants. Thus, the court limited the award against Herup to $81,584.12, which is equivalent to the amount First Boston paid to the Grants for the business. First Boston asserts that Herup's purchase price is the value of the assets

ness to Herup was fraudulent, and whether Herup was a good faith purchaser within the meaning of the UFTA.[26] Accordingly, we reverse the district court judgment as to Herup and remand this matter for a new trial consistent with this opinion.

PARRAGUIRRE and SAITTA, JJ., concur.

---

transferred and the district court erred in limiting its award to approximately $81,000. Because we remand this matter for a new trial, we need not address the proper measure of damages allowable for a fraudulent transfer under NRS 112.220(3), which states that if the judgment is based on the transferred asset's value, then the "judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require."

[26]We have considered the parties' other arguments on appeal and cross-appeal, and we conclude that they lack merit.