# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| NCP BAYOU 2, LLC<br>Appellant,<br>vs.<br>GIORGIO MEDICI; ELVIRA MALENKY<br>MEDICI; EDELTRAUD REVORD; AND<br>RUEDIGER SCHRAGE,<br>Respondents. | No. 73122 |
| NCP BAYOU 2, LLC<br>Appellant,<br>vs.<br>GIORGIO MEDICI; ELVIRA MALENKY<br>MEDICI; EDELTRAUD REVORD; AND<br>RUEDIGER SCHRAGE,<br>Respondents. | No. 73820<br><br>FILED<br><br>MAR 21 2019<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>DEPUTY CLERK |

## ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

These are consolidated appeals from district court orders granting summary judgment in a fraudulent transfer action and awarding attorney fees and costs. Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

Multibank 2009-1 RES-ADC Venture, LLC and RES-GA Bay Saint Louis, LLC (collectively, "Multibank")[1] were assigned respondent Giorgio Medici's debts after Giorgio defaulted on a number of loans in his

[1]During the pendency of this appeal, Multibank and RES-GA assigned their respective judgments to NCP Bayou 2, LLC (NCP). In April of 2018, we entered an order substituting NCP as the real party in interest to this action with respect to Multibank. In March of 2019, NCP and RES-GA moved for this court to modify its order to include NCP as the real party in interest with respect to RES-GA. That motion is granted. Cause appearing, we direct the clerk of the court to amend the docket to conform to the caption in this order.

19-12529

failing real estate business. Multibank obtained default judgments against Giorgio and once it began attempting to collect on those judgments, Giorgio filed for Chapter 7 bankruptcy. During discovery in the bankruptcy proceeding, Multibank uncovered what it believed was a scheme to transfer funds from Giorgio to his wife, respondent Elvira Medici, and his friends, respondents Edeltraud Revord and Ruediger Schrage, in violation of the Uniform Fraudulent Transfer Act (UFTA). After Giorgio moved to waive the discharge of his debts in the bankruptcy proceeding, Multibank initiated this suit. Against all respondents, Multibank alleged (1) fraudulent transfer and (2) civil conspiracy to commit a fraudulent transfer in violation of UFTA. Against Elvira, Revord, and Schrage, Multibank also alleged (3) aiding and abetting to commit a fraudulent transfer. After approximately two years of discovery, the district court granted respondents' motions for summary judgment, finding that Multibank was unable to produce any evidence of fraudulent transfers from Giorgio to Elvira, Revord, or Schrage. Thereafter, the district court awarded attorney fees and costs to the respondents, as well as to Multibank for a frivolous counterclaim brought by Revord and Schrage.

*Summary judgment*

Reviewing the district court's order granting summary judgment de novo, *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005), we affirm the district court's order. "Three types of transfers may be set aside under the UFTA: (1) actual fraudulent transfers; (2) constructive fraudulent transfers; and (3) certain transfers by insolvent debtors." *Herup v. First Boston Fin., LLC*, 123 Nev. 228, 233, 162 P.3d 870, 873 (2007) (footnote omitted); *see also* NRS 112.180(1)(a)-(b); NRS 112.190. The uniting factor for each of these transfers is that it is the debtor who

must make the transfer to a third party. *See* NRS 112.180(1) ("A transfer made or obligation incurred *by a debtor* is fraudulent as to a creditor . . . *if the debtor* made the transfer or incurred the obligation . . . ." (emphases added)); NRS 112.190(1) (same). Multibank failed to provide evidence of a single transfer from Giorgio, the debtor, to Elvira, Revord, or Schrage that would support an UFTA claim.

Further, any transfers involving Medtuscan, LLC, a corporation created by Giorgio, its sole member, cannot be considered transfers made by Giorgio because Multibank failed to name Medtuscan as a party or assert an alter ego theory in order to pierce the corporate veil. *See Callie v. Bowling*, 123 Nev. 181, 185-86, 160 P.3d 878, 880-81 (2007) (holding that judgment creditors attempting to collect a debtor's assets in another party's hands under the alter ego doctrine "must do so in an independent action against the alleged alter ego with the requisite notice, service of process, and other attributes of due process"); *LFC Mktg. Grp., Inc. v. Loomis*, 116 Nev. 896, 904, 8 P.3d 841, 846-47 (2000) (stating that to pierce the corporate veil, a plaintiff must establish by a preponderance of the evidence the elements of alter ego theory). Multibank claims on appeal that Medtuscan was "merely a conduit" for Giorgio and that it was not required to join Medtuscan as a party or allege an alter ego theory. Multibank relies on federal bankruptcy jurisprudence for this assertion. However, to the extent that Multibank suggests that Medtuscan was "merely a conduit" for Giorgio under federal bankruptcy law, this argument fails as a result of the same factual deficiencies relevant to the alter ego analysis; the record is devoid of any evidence that Giorgio was the source of the funds. Accordingly, we do not consider transfers made by Medtuscan to Elvira, Revord, and Schrage as transfers made by the "debtor" under UFTA.

Additionally, Multibank asserts that there are credibility issues regarding respondents that are sufficient to overcome summary judgment. The credibility of witnesses can amount to a genuine issue of material fact preventing the grant of summary judgment. *See Short v. Hotel Riviera, Inc.*, 79 Nev. 94, 102-03, 378 P.2d 979, 984 (1963). However, this case does not present such genuine issues. While Multibank notes a number of conflicting explanations for the source of the funds that Elvira, Revord, and Schrage transferred to Giorgio over the years, the inferences Multibank urges this court to draw do not amount to fraudulent transfers because there is no evidentiary basis in the record to support the argument that Giorgio was the source of the funds. Multibank is ostensibly relying on the speculation that inconsistencies in respondents' testimonies at trial will amount to transfers from Giorgio to Elvira, Revord, and Schrage. *See Howard Hughes Med. Inst. v. Gavin*, 96 Nev. 905, 909, 621 P.2d 489, 491 (1980) (holding that "[n]either mere conjecture nor hope of proving the allegations of a pleading is sufficient to create a factual issue"); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (explaining that an issue of fact must be "genuine" and that a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"). Even considering any inconsistencies in a light most favorable to Multibank, *Wood*, 121 Nev. at 729, 121 P.3d at 1029, there is no evidence that Giorgio transferred money to respondents.

*Conspiracy and aiding and abetting claims*

We also conclude that the district court did not err when it dismissed Multibank's conspiracy and aiding and abetting claims in its order granting summary judgment. In *Cadle Co. v. Woods & Erickson, LLP*, 131 Nev. 114, 345 P.3d 1049 (2015), we held that "nontransferees, *i.e.*, those

who have not received or benefited from the fraudulently transferred property, are not subject to accessory liability for fraudulent transfer claims." *Id.* at 117, 345 P.3d at 1052. Multibank failed to prove any fraudulent transfers from debtor Giorgio to Elvira, Revord, and Schrage; therefore, there is no evidence that Elvira, Revord, and Schrage "received or benefited from" the fraudulent transfer of any property. *Id.* As such, Elvira, Revord, and Schrage fit squarely within the holding of *Cadle* and are not exposed to accessory liability. Accordingly, the district court did not err in dismissing Multibank's civil conspiracy and aiding and abetting claims.[2]

*Sanctions for discovery abuses*

Regarding the district court's sanction of Multibank for discovery abuses, we conclude that the district court did not abuse its discretion. *Foster v. Dingwall*, 126 Nev. 56, 65, 227 P.3d 1042, 1048 (2010) (establishing that a district court's decision regarding discovery sanctions is generally reviewed for an abuse of discretion). We need not determine whether this court would have imposed sanctions in the case, but merely whether "no reasonable judge could reach a similar conclusion under the same circumstances." *Leavitt v. Siems*, 130 Nev. 503, 509, 330 P.3d 1, 5 (2014). Multibank argues that the district court abused its discretion when it prevented them from obtaining email communications as part of the

---

[2]To the extent the district court may have read *Cadle* too broadly when it stated that no accessory liability exists in fraudulent transfer actions regardless of whether the party is a transferee or a nontransferee, the district court nevertheless reached the right result in dismissing the two causes of action. *See Las Vegas Convention & Visitors Auth. v. Miller*, 124 Nev. 669, 689 n.58, 191 P.3d 1138, 1151 n.58 (2008) ("[W]e will affirm the district court if it reaches the right result, even when it does so for the wrong reason.").

discovery sanction because the district court ignored respondents' repeated violations of NRCP 34 and the discovery order filed February 19, 2016. Multibank asserts that respondents were already compelled by court order to produce email communications from their Microsoft Corporation, Yahoo! Inc., AT&T Mobility Inc., and Google Inc. accounts, and therefore the district court erred when it halted Multibank's efforts to obtain critical evidence.

We conclude that the district court did not abuse its discretion when it sanctioned Multibank for its repeated discovery abuses, which included issuing the Google subpoena while Elvira's motion to quash was pending, failing to give respondents notice of a subpoena to Google, withholding a crucial letter from Microsoft, and failing to disclose a similar letter from Google. Although Multibank provides documentation of instances in later depositions where respondents stated that email communications did exist and respondents may have even deleted some of those emails, abuse of discretion does not ask us to review a district court's decision with 20/20 hindsight. *Leavitt*, 130 Nev. at 509, 330 P.3d at 5. Evidence supports the district court's conclusion that Multibank committed discovery abuses, and we accordingly conclude that the district court did not abuse its discretion in issuing sanctions against Multibank.

*Adverse inference*

Additionally, Multibank argues that the district court erred when it implemented an adverse inference against respondents because the adverse inference was not truly adverse to respondents. We review the district court's imposition of an adverse inference for an abuse of discretion. *Bass-Davis v. Davis*, 122 Nev. 442, 447-48, 134 P.3d 103, 106 (2006) ("[I]f the district court, in rendering its discretionary ruling on whether to give

an adverse inference instruction, has examined the relevant facts, applied a proper standard of law, and, utilizing a demonstratively rational process, reached a conclusion that a reasonable judge could reach, affirmance is appropriate." (internal quotation marks omitted)). As outlined above, the district court imposed a sanction on Multibank, precluding it from obtaining access to emails in respondents' accounts. However, the district court also imposed an adverse-inference sanction against respondents should they belatedly disclose any communications that they were obligated to produce pursuant to the discovery order. The adverse-inference sanction was that the district court would view any untimely disclosures in a light most favorable to Multibank's claims. As respondents assert, the district court's imposition of a future adverse inference was to balance the equities with the sanctioning of Multibank's conduct. As the district court's decision regarding the adverse inference was reasonable and used a rational process, we conclude that the district court did not abuse its discretion in imposing the future adverse inference against respondents.

*Attorney fees and costs*

Multibank further argues that the district court erred in awarding respondents attorney fees and costs pursuant to NRS 18.010(2)(b). Reviewing the district court's award for an abuse of discretion, *Gunderson v. D.R. Horton, Inc.*, 130 Nev. 67, 80, 319 P.3d 606, 615 (2014), we conclude that the district court did not abuse its discretion. NRS 18.010(2)(b) authorizes the district court to award attorney fees when it finds that a complaint "was brought or *maintained* without reasonable ground or to harass the prevailing party." (Emphasis added). NRS 18.010(2)(b) also mandates liberal construction of the statute in favor of awarding fees to deter frivolous claims and prevent clogging up the courts.

*Id.* Here, after granting respondents' motion for summary judgment, the district court awarded attorney fees to respondents pursuant to NRS 18.010(2)(b) after finding the claims were groundless because Multibank was unable to produce *any* evidence of transactions flowing directly from Giorgio to Elvira, Revord, and Schrage. *See Bobby Berosini, Ltd. v. People for the Ethical Treatment of Animals*, 114 Nev. 1348, 1354, 971 P.2d 383, 387 (1998) (explaining that a claim is groundless pursuant to NRS 18.010(2)(b) when the allegations "are not supported by any credible evidence" (internal quotation omitted)). Accordingly, we conclude the district court did not abuse its discretion when it awarded respondents attorney fees pursuant to NRS 18.010(2)(b).

We also conclude that the district court did not err when it applied the *Brunzell* factors with regard to Elvira, Revord, and Schrage's requests for attorney fees. *See Brunzell v. Golden Gate Nat'l Bank*, 85 Nev. 345, 349-50, 455 P.2d 31, 33 (1969) (outlining multiple factors for the district court's consideration when awarding attorney fees). The district court noted that it considered all of the *Brunzell* factors in its order granting attorney fees to Elvira, Revord, and Schrage. And the district court's decision evinces a thoughtful contemplation of the requested amounts, including a finding that counsel failed to identify timekeepers and a subsequent reduction in the amount awarded based on this deficiency. We conclude that the district court's analysis was sufficient to demonstrate that it did not abuse its discretion. Accordingly, we affirm the district court's award of attorney fees to Elvira, Revord, and Schrage.

However, we conclude that the district court abused its discretion when awarding fees to Giorgio. In the portion of its order considering Giorgio's request for attorney fees, the district court failed to

(O) 1947A

consider any of the *Brunzell* factors. *Shuette v. Beazer Homes Holdings Corp.*, 121 Nev. 837, 864-65, 124 P.3d 530, 548-49 (2005) (emphasizing that courts must consider the *Brunzell* factors when determining the amount of attorney fees to award, even though courts are granted a wide range of discretion in determining the amount); *see also Argentena Consol. Mining Co. v. Jolley Urga Wirth Woodbury & Standish*, 125 Nev. 527, 540 n.2, 216 P.3d 779, 788 n.2 (2009) (reiterating that the district court's award of attorney fees must include findings as to the reasonableness of the fees under *Brunzell*), *superseded by statute on other grounds as stated in Fredianelli v. Fine Carman Price*, 133 Nev., Adv. Op. 74, 402 P.3d 1254, 1255-56 (2017). The district court merely quoted the amount Giorgio requested and awarded those attorney fees under NRS 18.010(2)(b) pursuant to its determination that Multibank's claims were frivolous. Because it is not clear that the district court followed the mandate to consider the *Brunzell* factors in the portion of its order considering Giorgio's request, we reverse the district court's award of attorney fees to Giorgio, and we remand for the district court to conduct an analysis of the *Brunzell* factors.

Additionally, we conclude that the district court did not abuse its discretion when it awarded respondent Schrage travel costs for a rescheduled deposition. *Logan v. Abe*, 131 Nev. 260, 267, 350 P.3d 1139, 1144 (2015) (reviewing an award of costs for an abuse of discretion). Because Schrage did not produce proof that the travel fare was non-refundable before the district court's imposed deadline, Multibank argues that Schrage waived the right to recover the additional travel expenses. Schrage and counsel submitted a subsequent affidavit explaining the reason for the delay, and the district court exercised its discretion to enlarge

the time within which to file the memorandum of costs. We conclude that the district court did not abuse its discretion by accepting the untimely memorandum of costs or Schrage's demonstration of costs and by determining the amount requested was reasonable.

Finally, we conclude that the district court did not abuse its discretion when it reduced by 50 percent the attorney fees awarded to Multibank for defending and prevailing against Revord and Schrage's counterclaim. *Gunderson*, 130 Nev. at 80, 319 P.3d at 615 (reviewing an award of attorney fees for an abuse of discretion). Here, the district court's order evinces a thoughtful analysis of all of the *Brunzell* factors and a specific finding that one of the factors was not met. Namely, the district court found that the number of hours spent defending the counterclaim was unreasonable and reduced the amount requested. Upon review of the record, we agree with the district court that Multibank conflated and did not distinguish between fees that were generated defending the counterclaims and fees that were generated prosecuting its own claims. Accordingly, the district court did not abuse its discretion in reducing the amount Multibank requested for attorney fees by 50 percent.

We therefore

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.[3]

_____, C.J.
Gibbons

_____, J.        _____, J.
Pickering                                   Hardesty

_____, J.        _____, J.
Parraguirre                                 Stiglich

cc:     Hon. Nancy L. Allf, District Judge
        Lansford W. Levitt, Settlement Judge
        Dickinson Wright PLLC
        Law Office of John W. Thomson
        Law Offices of P. Sterling Kerr
        Eighth District Court Clerk

_____

[3]The Honorable Elissa F. Cadish, Justice, and the Honorable Abbi Silver, Justice, did not participate in the decision of this matter.